**UNITED STATES of America ex rel. Jose MIRELES, Petitioner,**

v.

**James GREER, Warden, Menard Correctional Center, Illinois Department of Corrections, Respondent.**

No. 81 C 4127.

United States District Court, N. D. Illinois, E. D.

Dec. 31, 1981.

Michael Filipovic and Charles Hoffman, Asst. State Appellate Defenders, Ottawa, Ill., for petitioner.

Tyrone C. Fahner, Atty. Gen. of State of Ill. by Neal B. Goodfriend, Asst. Atty. Gen., Chicago, Ill., for respondent.

## ORDER

BUA, District Judge.

Petitioner, Jose Mireles, was convicted of the offense of murder following a jury trial in the Circuit Court of Cook County on June 7, 1976. In his Petition for a Writ of Habeas Corpus, petitioner contends that he is being unconstitutionally detained in the Illinois State Penitentiary at Menard, Illinois. The alleged unconstitutional detention complained of arises from the failure of the state trial judge to *sua sponte* order a mental competency hearing where the facts known to the trial court created a *bona fide* and serious doubt as to petitioner's mental competency to stand trial, and the trial court in fact found that it had a *bona fide* doubt as to petitioner's competence but resolved this doubt without conducting an evidentiary hearing. Petitioner has exhausted all available state remedies. Before the court are the parties' cross motions for summary judgment.

The facts surrounding petitioner's claim are not in dispute and are substantially as follows. On March 30, 1975 petitioner killed the woman with whom he had lived by strangling her with an electrical cord. Shortly thereafter, he unsuccessfully attempted suicide by stepping on the "third" or "electric" rail in a subway station. Later the same day, petitioner was arrested and he admitted the commission of the offense to the police. On March 31, 1975 petitioner was hospitalized at Cermak Hospital under the care of Dr. Baker Howell. Petitioner remained hospitalized under Dr. Howell's psychiatric care up to the date of his trial in March, 1976.

Petitioner was initially represented in the trial court by an Assistant Cook County Public Defender. On April 11, 1975 the Assistant Public Defender requested that petitioner be examined by a psychiatrist to determine his mental fitness to stand trial. On April 22, 1975 petitioner was examined by Dr. Langner who reported to the court that petitioner was suffering from schizo-

phrenia latent type, that he was experiencing auditory hallucinations, and that he was quite depressed and had made numerous previous suicide attempts. This report concluded that petitioner was currently not competent to stand trial.

On July 10, 1975 private counsel filed his appearance on behalf of the petitioner and the Public Defender withdrew. On August 26, 1975 petitioner's private counsel reported that he did not desire another fitness examination and that he had no "problem with cooperation" with his client despite petitioner's extensive history of mental and emotional problems. The trial court, on its own motion, ordered that petitioner be examined to determine his present fitness.

On October 3, 1975 petitioner was examined by Dr. Robert Reifman of the Psychiatric Institute of Cook County. Dr. Reifman reported his opinion that petitioner was not mentally fit to stand trial. On October 31, 1975, at defense counsel's request, a competency hearing was set for November 30. On November 11, however, defense counsel informed the court that he believed that defendant was fit to stand trial. This belief was based upon his experience with petitioner and the report of petitioner's privately retained psychiatrist, Dr. Judas. The court ruled that in light of the earlier finding of Dr. Reifman, it would schedule a fitness hearing on its own motion.

On December 23, 1975, defense counsel presented to the court the report of Dr. Judas. In that report Dr. Judas, who examined defendant on November 12, concluded that defendant was fit to stand trial. The following is excerpted from the report.

"At this point his thought processes are not sufficiently interfered with nor is his affect so far withdrawn that he cannot understand or cooperate in a trial. It seemed to me this was adequately demonstrated by how he was able to deal with me in the interview.

Specifically, he was able to tell me why I was here to examine him according to what I knew his lawyers had told him. In addition, he held up without disintegration to extensive investigation on my part into his personal history, his offense, and the nature and the functions of his lawyers, social worker, and his fitness hearing and trial.

I see no good purpose in continuing to postpone his trial. As a matter of fact there may be adverse consequences as he sits out his guilt and uncertainties. Under the circumstances of his present confinement, he is in as good shape as he is apt to be."

Defense counsel again opposed holding a fitness hearing, basing this opposition on the report and on his experience with the defendant. However, the matter was continued to January 21, 1976. On that date the court received the report of Dr. Reifman, who had examined the defendant a second time on January 16, 1976. He concluded that defendant was fit to stand trial "with medication." Upon inquiry by the court one of defendant's attorneys stated that to the best of her knowledge defendant was receiving medication. She also advised the court it was in the best interest of the defendant to have the trial as soon as possible. The court stated:

"The competency hearing was scheduled on the basis that there was some bona fide indication that the defendant may not be competent to stand trial or fit to stand trial.

Your doctor, Dr. Junas (sic), who examined the defendant, indicated it was her opinion that the defendant was fit to stand trial.

Dr. Reifman, upon re-examination, has indicated that it was his opinion at the present time that the defendant is fit to stand trial with medication.

I'm sure that he's receiving that medication, so on that basis, there is no need to have a competency hearing."

Two months later petitioner's cause proceeded to trial. At trial, petitioner testified that at times he would hear voices. Two nights prior to trial, he stated that he suffered these auditory hallucinations. In addition, testimony was presented which established that Mireles had a long history of

disturbed behavior including several suicide attempts. It was revealed that petitioner had at one time adopted the identity of an American Indian and the alias "Johnnie Graywolf."

Petitioner's sole defense was his alleged insanity at the time of the occurrence. In sentencing the petitioner, the trial court recommended to the Illinois Department of Corrections that the petitioner receive immediate and continued psychiatric treatment to foster his recovery and that he be confined to an institution which provides such treatment.

Petitioner filed a motion for a new trial in the trial court which in part alleged that the court erred in failing to *sua sponte* hold an evidentiary hearing and make a judicial determination of the issue of petitioner's fitness to stand trial. Petitioner's motion for a new trial was denied, and this conviction was affirmed by the Illinois Appellate Court in *People v. Mireles*, 79 Ill.App.3d 173, 34 Ill.Dec. 475, 398 N.E.2d 150 (1979). Petitioner sought leave to appeal to the Illinois Supreme Court and petitioned the United States Supreme Court for a writ of certiorari; however, both courts denied leave to appeal.

Petitioner argues that the trial court's failure to conduct a competency hearing after an initial determination that there existed a *bona fide* doubt as to his competency to stand trial violates his right to due process. *Drope v. Missouri*, 420 U.S. 162, 95 S.Ct. 896, 43 L.Ed.2d 103 (1975); *Pate v. Robinson*, 383 U.S. 375, 86 S.Ct. 836, 15 L.Ed.2d 815 (1966); *Bishop v. United States*, 350 U.S. 961, 76 S.Ct. 440, 100 L.Ed. 835 (1956). Respondent argues that the trial court properly determined that no *bona fide* doubt existed as to petitioner's competency at the time petitioner was tried.

The court agrees with petitioner that the facts presented to the trial court; specifically the evidence of his irrational behavior immediately following the commission of the offense, the initial psychiatric reports concerning his competency, and his uninterrupted psychiatric care which continued up to the date of trial, provided substantial evidence of petitioner's incompetence to stand trial. In fact, the trial judge determined, over objection of counsel, that he entertained considerable doubt concerning petitioner's competency. The issue presented, an issue which was not addressed by the Illinois Appellate Court, is whether the court may resolve this doubt without conducting an evidentiary hearing.

In the present case, there is no question that the trial court entertained a *bona fide* and serious doubt concerning defendant's competence to stand trial. In dispensing with this doubt, the trial court understandably relied upon factors relevant to the ultimate determination of this question, not the least of which was defense counsel's repeated insistence that his client was competent to stand trial. The court believes, however, that the question of whether the trial court may resolve this doubt without conducting an evidentiary hearing must be resolved in favor of petitioner.

In *Pate*, the United States Supreme Court determined that where the trial court entertains a *bona fide* doubt, or substantial evidence of the defendant's incompetence to stand trial is presented, the trial court has a constitutional duty to order and conduct an evidentiary hearing. *Pate v. Robinson*, 383 U.S. 375, 86 S.Ct. 836, 15 L.Ed.2d 815 (1966). In reaching this decision, the court commented "[w]hile Robinson's demeanor at trial might be relevant to the ultimate decision as to his sanity, it cannot be relied upon to dispense with a hearing on that very issue." *Pate v. Robinson*, 383 U.S. 375, 386, 86 S.Ct. 836, 15 L.Ed.2d 815 (1966). Similarly, the court agrees with respondent that the subsequent psychiatric reports and representations of counsel are relevant to the determination of petitioner's competence, but these factors cannot be relied upon to dispense with a hearing on this issue once the trial court has determined that there exists a *bona fide* doubt concerning petitioner's competence. *Pate v. Smith*, 637 F.2d 1068 (6th Cir. 1981). The court therefore finds that petitioner's constitutional rights were violated by the trial

court's failure to conduct a hearing on his competence to stand trial.

For the reasons stated, the court will issue the writ of habeas corpus, with respondent directed to discharge Mireles unless the state conducts the hearing the court has now prescribed or grants the petitioner a new trial within a reasonable time.