## MAGGIO, WARDEN *v.* FULFORD

No. 82–1408.   Decided June 6, 1983

Per Curiam.

Respondent John Fulford was found guilty of murder by a Louisiana jury in 1972.   His conviction was affirmed on appeal to the Louisiana Supreme Court, *State* v. *Nix*, 327 So. 2d 301 (1975), and, after exhausting state postconviction remedies, he sought federal habeas corpus relief.   The

United States District Court for the Western District of Louisiana denied relief, App. to Pet. for Cert. A–21, but the Court of Appeals for the Fifth Circuit reversed, holding that "we cannot, with the certitude befitting a federal court, affirm that Fulford possessed the mental competency to participate meaningfully in his trial." 692 F. 2d 354, 361 (1982) (footnote omitted). We grant the motion of respondent for leave to proceed *in forma pauperis* and the petition for certiorari, and reverse the judgment of the Court of Appeals.

The bone of contention in this case was respondent's competency to stand trial more than 11 years ago. On the morning of trial respondent's counsel moved to appoint a commission to inquire into respondent's competency to stand trial.[1] At the same time counsel moved for a severance. Neither counsel nor respondent had previously broached the question of competency, and nothing appears in the record which suggests that respondent had a history of mental or emotional difficulties.[2] The sole evidence submitted in support of respondent's motion for appointment of a competency commission was the testimony of one Dr. McCray, a local psychiatrist. Until the morning immediately preceding trial, McCray had never seen, nor, so far as the record reveals,

---

[1] Respondent's request was apparently submitted pursuant to La. Code Crim. Proc. Ann., Art. 644 (West 1981), which empowers the trial court to appoint a commission of at least two qualified physicians to "examine and report upon the mental condition of a defendant."

Likewise, Art. 643 provides that the "trial court may, in the exercise of its sound discretion, order a mental examination of the defendant when it has reasonable ground to doubt the defendant's mental capacity to proceed."

[2] In his motion for appointment of a competency commission, respondent's counsel alleged: "It has further been reported to counsel that the defendant has been placed before a lunacy commission in the State of Florida in 1953, and was declared a borderline case. . . . [T]he aforesaid report is of this date unconfirmed and counsel had requested a record check in the State of Florida to determine if such a hearing had been convened and the result thereof." 4 Record 933. The record contains no other mention of this incident, much less confirmation of the allegation.

heard of, respondent. Based upon a prison cell interview of approximately one hour the day before trial, McCray testified in the following fashion, as summarized by the Court of Appeals:

> "Dr. McCray noted that an evaluation usually requires several sessions as well as a supporting evaluation from a clinical psychologist. Finding Fulford to be well oriented to time, place and person, Dr. McCray nevertheless testified that Fulford had paranoid delusions which rendered him incompetent to stand trial. Specifically, Fulford had told Dr. McCray that he was withholding the names of alibi witnesses who could prove his innocence for fear that they would be arrested and prevented from testifying in his behalf." *Id.*, at 360.

While the Court of Appeals was less explicit than it might have been on the issue, we think a fair reading of its opinion indicates that it concluded under 28 U. S. C. § 2254(d)(8) that the state court's determination that respondent was competent to stand trial was not "fairly supported by the record." See 692 F. 2d, at 360–361; *Sumner* v. *Mata*, 449 U. S. 539 (1981). We believe that, in reaching this conclusion, the Court of Appeals erroneously substituted its own judgment as to the credibility of witnesses for that of the Louisiana courts—a prerogative which 28 U. S. C. § 2254 does not allow it. *Marshall* v. *Lonberger*, 459 U. S. 422 (1983).

The Louisiana trial judge explained his refusal to order a competency hearing in two *per curiam* opinions, which contained the following factual findings relevant to his decision. First, the trial judge was convinced that respondent was "oriented as to time, date and place and was cognizant of everything around him." 692 F. 2d, at 360. The judge further noted that Fulford's conduct during and after the trial "thoroughly convinced" him that respondent was competent and able to assist in his defense. The trial judge did not "deem it necessary to fill in all the other matters that appeared throughout the trial and all of the post-trial motions that have

been filed because the record will adequately represent this fact." 4 Record 953. As set out in the margin, there is substantial support for the trial judge's statement.[3] Third, the trial judge concluded that the only basis advanced by McCray for his tentative conclusion that respondent suffered from

---

[3] For example, two days after he moved for appointment of a competency commission, respondent informed the trial judge that "I can defend myself, and that is the point I'd like to get across." Likewise, at a sentencing hearing in January 1974 Fulford sought permission to pursue appeal of his conviction *pro se*. After the presiding judge expressed reluctance at permitting this, because of Fulford's earlier assertion of incompetence, Fulford stated:

"I gave this a great deal of thought prior to coming here . . . I may talk funny, think I'm from the cotton patch and perhaps I am, but as far as protecting my own appeal that is my election and I believe I can do it artfully and I believe I will have a reversal in the Supreme Court and be awarded a new trial. And I have given this a great deal of thought and I have made the election, it is my right, it is my future, and if I blow it [no one] has blowed it but me, I fully understand my rights, I fully understand what I am doing, what I am facing and the consequences of it and with that in mind I still elect to defend my own self on appeal and I ask you to grant that motion and grant me a constitutional right to do this." 24 Record 2793–2794.

The irony of respondent's change of heart regarding his state of mind was not lost on him. In his habeas petition in District Court respondent noted: "It is awk[w]ard for petitioner to argue in this petition that he was unable to assist in his defense during trial, as attested by Dr. McCray," and "then seek the right to defend pro se during the course of trial." Pet. for Habeas Corpus in No. 76–748 (WD La.), p. 15. The "awkwardness" of respondent's position becomes even more apparent in light of the arguments advanced in support of his claim to a right to have proceeded *pro se* in trial court. Respondent argued that he "was denied the right to defend pro se with-out *[sic]* counsel by Judge Veron after petitioner voluntarily and intelligently elected to do so." *Id.*, at 16.

As the pleadings and briefs filed by respondent in state and federal courts indicate, his legal abilities are scarcely those of a mental incompetent. As one member of the Louisiana Supreme Court has observed, respondent "has demonstrated skill and experience in criminal law in writ applications filed in this Court." *State* v. *Fulford*, 299 So. 2d 789 (1974) (Nixon, J., dissenting).

paranoid delusions—respondent's failure to inform his law-
yers of the identities of two alibi witnesses—was unfounded.
These two witnesses testified in respondent's behalf less than
a week after Fulford convinced McCray that he was with-
holding the identities of his alibi witnesses. As the Louisi-
ana Supreme Court observed, "it is clear that Mr. Fulford
did not withhold the names of his witnesses, and was able
to assist his counsel in the preparation and conduct of his
defense." 327 So. 2d, at 324.

Most importantly for our purposes, the trial judge concluded
that respondent's surprise, 11th-hour motion for appointment
of a competency commission "was just a subterfuge on the part
of this defendant to attempt to keep from going to trial so that
he would be tried at a different time from the other defend-
ants." *Ibid.* The trial judge explained:

> "During the course of the jury selection in this matter,
> for the two days that it took to select this jury, this
> Court noted that every time either counsel for defend-
> ants would approach defendant Fulford to converse with
> him concerning the jury selection, defendant Fulford
> would turn his head in the other direction. I got the
> distinct impression from what was going on that Mr.
> Fulford was attempting to play a game with the Court
> in order to try to get his case severed from the other
> defendants. I further gathered from the legal maneu-
> verings that there was an attempt to sever Fulford from
> the other two defendants so that some additional legal
> maneuvering might be made at some later time. I
> might further add, that contrary to what the doctor tes-
> tified at the hearing to determine whether Mr. Fulford
> was unable to assist counsel in his defense, that the
> alleged eye witnesses, which Mr. Fulford stated would
> prove his innocence, were called and did testify as to his
> alleged alibi. Throughout the entire trial Mr. Fulford
> was accorded a complete and full defense and I saw noth-
> ing from the beginning of the trial to the end that in any

way detracted from any of Mr. Fulford's rights.   I hesitate to state but I do feel that this was a plan designed by Mr. Fulford to try to disrupt his trial and to prevent him from being tried with his co-defendants."   5 Record 1024–1025.

Based upon these observations, the trial judge concluded that there was insufficient likelihood that respondent was incompetent to warrant appointment of a commission.

The Louisiana Supreme Court affirmed, relying on the arguments advanced by the trial judge, and noting that his "findings are amply supported by the record."   327 So. 2d, at 324.   The Supreme Court of Louisiana also observed that the trial judge had the "ability . . . to observe Mr. Fulford at length during the preliminary hearings and the trial of this case."   *Ibid.*   It also took note of the "limited time" that Dr. McCray spent with respondent.

The Court of Appeals apparently found all of this unpersuasive.   There is no dispute as to the proper legal standard to be applied for determining the correctness of the trial court's actions, see *Pate* v. *Robinson,* 383 U. S. 375, 386 (1966); *Drope* v. *Missouri,* 420 U. S. 162 (1975).   Thus, the three judges of the Court of Appeals appear to have differed from the Louisiana trial judge, the seven Justices of the Supreme Court of Louisiana, and the Federal District Judge, only with respect to evaluation of the evidence before the trial court.   The principal explanation offered by the Court of Appeals for its refusal to accept the previous judicial assessments of this testimony are contained in the following excerpt from its opinion:

"The State urges that Fulford had the capability to assist his attorney but simply refused to do so.   But if this refusal was based on his paranoid delusions, it cannot be successfully urged that Fulford was actually capable of assisting counsel.

"A more troubling aspect of the present issue is the trial court's finding that Fulford was trying to delay the

trial, and possibly obtain a severance. Given the timing of the motion, and a subsequent request by Fulford for a severance, we would uphold the trial court if it had been confronted by a barebones motion, with only the statement of Fulford's attorney as support. That is not the present case. Dr. McCray's testimony was unimpeached. His qualifications as a psychiatrist were unchallenged by the prosecution. Although his examination was brief, it was precisely because of this brevity that he suggested further evaluation was needed. On these facts, we believe that the state court committed constitutional error in not conducting further competency proceedings." 692 F. 2d, at 361.

Before a federal habeas court undertakes to overturn factual conclusions made by a state court, it must determine that these conclusions are not "fairly supported by the record." 28 U. S. C. § 2254(d)(8). Under this standard we have not the slightest hesitation in saying that the trial court's conclusion as to Fulford's competency was "fairly supported by the record." The trial judge's observation of Fulford's conduct, both prior to and during trial; his observation of the testimony of Dr. McCray and the statements of respondent's counsel regarding his refusal to cooperate with them; his inferences regarding the fact that Fulford's alleged refusal to disclose his alibi witnesses either never occurred, or was remedied; the weight he attributed to the unannounced, last-minute timing of the motion for appointment of a competency commission; and the inferences to be drawn from the failure of the defense to pursue psychiatric examination beyond the "tentative" stage, despite ample time and opportunity to do so, all provide ample record support for the trial judge's conclusion that there was insufficient question as to Fulford's competence to warrant appointment of a commission.

The Court of Appeals apparently concluded that the trial judge was obligated to credit both the factual statements and

the ultimate conclusions of Dr. McCray solely because he was "unimpeached." 692 F. 2d, at 361. This is simply not the law.

> "'Face to face with living witnesses the original trier of the facts holds a position of advantage from which appellate judges are excluded. In doubtful cases the exercise of his power of observation often proves the most accurate method of ascertaining the truth. . . . How can we say the judge is wrong? We never saw the witnesses. . . .'" *United States* v. *Oregon Medical Society*, 343 U. S. 326, 339 (1952), quoted in *Marshall* v. *Lonberger*, 459 U. S., at 434.

We are convinced for the reasons stated above that the question whether the trial court's conclusions as to respondent's competency were "fairly supported by the record" must be answered in the affirmative.

The judgment of the Court of Appeals is accordingly

*Reversed.*

JUSTICE WHITE, concurring in the judgment.

The "fairly supported by the record" standard of 28 U. S. C. § 2254(d)(8) applies only to underlying questions of background fact. Questions of law, and mixed questions of law and fact, such as the "ultimate question as to the constitutionality of . . . pretrial identification procedures," *Sumner* v. *Mata*, 455 U. S. 591, 597 (1982), or the question whether a guilty plea is voluntary for purposes of the Constitution, *Marshall* v. *Lonberger*, 459 U. S. 422, 431–432 (1983), may be reviewed more independently. In deciding such questions, "the federal court may give different weight to the facts as found by the state court and may reach a different conclusion in light of the legal standard." *Mata*, 455 U. S., at 597. But only the "fact[s] that underlie th[e] ultimate conclusion" are governed by § 2254(d)(8). *Ibid.*

Our cases have treated the ultimate question whether a defendant is competent to stand trial as at least a mixed

question of law and fact. *Drope* v. *Missouri*, 420 U. S. 162, 174–175, 175, n. 10 (1975); *Pate* v. *Robinson*, 383 U. S. 375, 385–386 (1966). See also *White* v. *Estelle*, 459 U. S. 1118 (1983) (MARSHALL, J., dissenting from denial of certiorari). Our precedents notwithstanding, the Court today reverses the Court of Appeals on the strength of the conclusion that "the trial court's conclusion as to Fulford's competency was 'fairly supported by the record.'" *Ante*, at 117. But since competency is not a purely factual question, § 2254(d)(8) and its "fairly supported" standard are inapplicable. The Court offers no explanation whatsoever for the failure to follow *Drope* and *Pate*, and it would certainly not be appropriate to overrule these cases summarily. If there is any doubt as to the proper classification of the competency question, we should grant certiorari and set this case for oral argument.

Since the Court opts in favor of summary action, however, I cast my vote accordingly. Absent plenary reconsideration of *Drope* and *Pate*, I cannot agree with the Court that competency is a question of historical fact and is to be treated as such by the courts of appeals in reviewing district court judgments in criminal cases or by the district courts in federal habeas corpus proceedings involving state-court convictions. However, I agree with the Court's ultimate conclusion that the judgment of the Court of Appeals must be reversed.

The Court details the undisputed background facts that support the trial judge's conclusion that there was insufficient question as to Fulford's competence to warrant appointment of a competency commission: "Fulford's conduct, both prior to and during trial; . . . the fact that Fulford's alleged refusal to disclose his alibi witnesses either never occurred, or was remedied; . . . the unannounced, last-minute timing of the motion for appointment of a competency commission; and . . . the failure of the defense to pursue psychiatric examination beyond the 'tentative' stage, despite ample time and opportunity to do so." *Ante*, at 117. Dr. McCray's testimony, on the other hand, indicated that there was a genuine

doubt as to Fulford's competency, but, as the Court points out, *ante,* at 117–118, the trial court was under no obligation to credit this testimony, and it did not do so. Hence, even considering the ultimate competency question as a freely reviewable pure question of law, I conclude that the trial judge's refusal to appoint a commission did not deprive Fulford of his federal constitutional rights, and I therefore concur in the judgment.

JUSTICE BRENNAN, with whom JUSTICE STEVENS joins, dissenting.

I agree with JUSTICE WHITE and JUSTICE MARSHALL that § 2254(d) does not apply to questions of competency. I also agree with JUSTICE MARSHALL that it is entirely inappropriate to dispose of this case on nothing more than the necessarily limited briefing filed by the parties to date. I do not agree, however, with JUSTICE MARSHALL's suggestion that we might decide the case with further briefing but not oral argument. Accepting the majority's premise that this case merits this Court's attention at all, I would grant the petition for certiorari and set the case for argument.

JUSTICE MARSHALL, dissenting.

I dissent.

The Court is simply wrong in assuming that 28 U. S. C. § 2254(d) applies to the question whether there is "a sufficient doubt of [the defendant's] competence to stand trial to require further inquiry on the question." *Drope* v. *Missouri,* 420 U. S. 162, 180 (1975). Our decisions clearly establish that whether a competence hearing should have been held is a mixed question of law and fact which is subject to full federal review. *Id.,* at 174–175, 179–181; *Pate* v. *Robinson,* 383 U. S. 375, 385–386 (1966).

Even if the Court were correct in assuming that 28 U. S. C. § 2254(d)(8) applies, there would be no justification for the Court's summary disposition of this case. This Court's Rules

governing petitions for certiorari were designed to help elicit the information necessary to decide whether review by certiorari is warranted. They were not designed to permit a decision on the merits on the basis of the certiorari papers.

In particular, Rule 22.2 states that "a brief in opposition shall be as short as possible." In compliance with this Rule the indigent respondent filed a mimeographed brief in opposition of seven pages, a substantial portion of which is devoted to the argument that the petition presents no question worthy of review by this Court—an argument that might well have been expected to prevail given the traditional learning that this Court "is not, and never has been, primarily concerned with the correction of errors in lower court decisions."[1] Only a few paragraphs of the brief in opposition discuss the record.[2]

If the Court is to decide whether the record supports the trial court's conclusion that no competence hearing was necessary, it should at least afford the parties a chance to brief that issue. This could be done by merely issuing an order (1) noting that the case will be disposed of without oral argument and (2) permitting both sides to file briefs on the merits. I do not think this is asking too much.

---

[1] Address by Chief Justice Vinson Before American Bar Association, Sept. 7, 1949, 69 S. Ct. v, vi (1949).

[2] With the full resources of a sovereign State, petitioner filed a printed petition for certiorari plus a full printed appendix. Petitioner's papers were signed by the State Attorney General, the District Attorney, and two Assistant District Attorneys.