**UNITED STATES of America ex rel. Jose MIRELES, Petitioner-Appellee-Cross-Appellant,**

v.

**James GREER, Respondent-Appellant-Cross-Appellee.**

**Nos. 83–1850, 83–2051.**

United States Court of Appeals, Seventh Circuit.

Argued Feb. 6, 1984.

Decided June 12, 1984.

As Amended June 14 and June 21, 1984.

Thomas Needham, Law Student, Loyola University Law School, Chicago, Ill., for petitioner-appellee-cross-appellant.

Neal B. Goodfriend, Asst. Atty. Gen., Chicago, Ill., for respondent-appellant-cross-appellee.

Before PELL and ESCHBACH, Circuit Judges, and BARTELS, Senior District Judge.*

BARTELS, Senior District Judge.

Petitioner-Appellee Jose Mireles was convicted in the Cook County, Illinois Circuit Court, after a jury trial, of the murder of his girlfriend Marsha Keshick, and was sentenced to a term of 15 to 30 years. Thereafter he appealed to the Illinois Ap-

pellate Court where the judgment was affirmed. *People v. Mireles,* 79 Ill.App.3d 173, 34 Ill.Dec. 475, 398 N.E.2d 150 (1979). Leave to appeal was denied by the Supreme Court of Illinois. *People v. Mireles,* No. 52946 (Sup.Ct.Ill. Mar. 27, 1980). A petition for a writ of certiorari was denied by the United States Supreme Court. *Mireles v. Illinois,* 449 U.S. 860, 101 S.Ct. 163, 66 L.Ed.2d 76 (1980). Subsequently, petitioner filed in the United States District Court for the Northern District of Illinois, pursuant to 28 U.S.C. § 2254, a petition for a writ of habeas corpus, which was granted, *United States ex rel. Mireles v. Greer,* 528 F.Supp. 1122 (N.D.Ill.1981) (Bua, J.), the district court finding that the petitioner was denied due process because the state trial court failed to conduct a hearing to determine the competency of the petitioner to stand trial. A motion to reconsider was denied. *United States ex rel. Mireles v. Greer,* No. 81–C–4127 (N.D.Ill. April 22, 1983). Citing *Pate v. Robinson,* 383 U.S. 375, 86 S.Ct. 836, 15 L.Ed.2d 815 (1966), and *Drope v. Missouri,* 420 U.S. 162, 95 S.Ct. 896, 43 L.Ed.2d 103 (1975), the district court stated, among other things, that:

> the evidence of [Mireles'] irrational behavior immediately following the commission of the offense, the initial psychiatric reports concerning his competency, and his uninterrupted psychiatric care which continued up to the date of trial, provided substantial evidence of petitioner's incompetence to stand trial. In fact, the trial judge determined, over objection of counsel, that he entertained considerable doubt concerning petitioner's competency. The issue presented, an issue which was not addressed by the Illinois Appellate Court, is whether the court may resolve this doubt without conducting an evidentiary hearing. (*United States ex rel. Mireles v. Greer,* 528 F.Supp. at 1124.)

and, further, that the court would issue the writ of habeas corpus unless the state con-

---

* The Honorable John R. Bartels, Senior United States District Judge for the Eastern District of New York, sitting by designation.

ducts a *nunc pro tunc* competency hearing or grants the petitioner a new trial within a reasonable time. After the respondent's motion for reconsideration was denied, this appeal followed, together with a cross appeal by the petitioner, claiming error in allowing the respondent the option of conducting a retrospective competency hearing. Because we reverse on the ground that the writ was improvidently granted, we need not address petitioner's cross appeal. Upon this appeal we are asked to determine whether the district court abused its discretion in determining that the state trial judge was required, *sua sponte*, to hold a hearing as to petitioner's competency to stand trial, once having expressed a doubt and fixed a date for such a hearing and thereafter changing his mind predicated upon subsequent reports.

### Background

On March 30, 1975, Mireles, who had been living with his girlfriend, Marsha Keshick, for several months, learned that she was about to leave him for another man, whereupon he became angry, kicked the door in, and strangled Marsha with an electrical cord. Immediately thereafter petitioner attempted unsuccessfully to kill himself by touching an electrical rail in a subway station. Later that same day, he was arrested by the police and sent on the following day (March 31, 1975) to Cermak Memorial Hospital for Cook County. He remained at Cermak Hospital under the psychiatric care of Dr. Baker Howell, Chief Psychiatrist, throughout all the pretrial proceedings as well as the trial itself a year later.

Mireles was initially represented by the Cook County Public Defender, who moved that the court appoint a psychiatrist to examine the petitioner to determine his competence to stand trial, which motion was granted on April 11, 1975. Accordingly, Mireles was examined by Dr. H.P. Langner of the Psychiatric Institute of the Circuit Court of Cook County. Dr. Langner noted that Mireles was suffering from schizophrenia, latent type, that Mireles' contact was poor, that he was experiencing auditory hallucinations, and that he had made numerous previous suicide attempts. Dr. Langner concluded that Mireles was currently not competent to stand trial.

On July 10, 1975, Mireles privately retained Malcolm Young of the Criminal Defense Services, who thereupon filed his appearance on Mireles' behalf. At a hearing held on August 26, 1975, counsellor Young informed the court that a defense of insanity was contemplated, and after receiving a prior fitness report concerning Mireles he stated that he had no problem cooperating with his client and that there was no reason to make any further inquiry as to Mireles' competence to stand trial. In other words, he opposed a competency hearing. Nevertheless, the court, upon being informed of Mireles' considerable history of mental and emotional problems, ordered that Mireles be examined again by the Psychiatric Institute to determine his fitness to stand trial. Dr. Robert A. Reifman, Assistant Director of the Psychiatric Institute of Cook County, then examined Mireles on October 3, 1975 and filed his report with the court on October 7, 1975, concluding that "it is my opinion that this defendant is not mentally fit to stand trial." On the same date, permission was given for the defendant to privately retain Dr. Ilse Judas, a psychiatrist, to evaluate Mireles as to his competency to stand trial and his sanity at the time of the offense. The court set November 20, 1975, as the date for a competency hearing. In the meantime, Mireles was examined on November 12, 1975 by Dr. Judas, who made a report from which the following is an excerpt:

> Specifically, he was able to tell me why I was here to examine him according to what I knew his lawyers had told him. In addition, he held up without disintegration to extensive investigation on my part into his personal history, his offense, and the nature and the functions of his lawyers, social worker, and his fitness hearing and trial.
>
> I see no good purpose in continuing to postpone his trial. As a matter of fact there may be adverse consequences as he

sits out his guilt and uncertainties. Under the circumstances of his present confinement, he is in as good shape as he is apt to be.

After this report was received by the court, Mireles' counsel, based upon his experience with Mireles, again expressed his opinion that a competency hearing was unnecessary and that the best interests of Mireles would be served by a speedy trial. In spite of this, the court continued the matter to January 21, 1976, for the purpose of holding a competency hearing.

However, on that date, pursuant to a court order, an additional or second report was filed by Dr. Reifman with the court in which he changed his former opinion and stated, among other things, "that this defendant is mentally fit to stand trial with medication." Based upon Dr. Judas' report and the revised opinion of Dr. Reifman, the court was satisfied as to Mireles' fitness to stand trial and found that a competency hearing was unnecessary, stating:

The competency hearing was scheduled on the basis that there was some bona fide indication that the defendant may not be competent to stand trial or fit to stand trial.

Your doctor, Dr. Junas (sic), who examined the defendant, indicated it was her opinion that the defendant was fit to stand trial.

Dr. Reifman, upon re-examination, has indicated that it was his opinion at the present time that the defendant is fit to stand trial with medication.

I'm sure that he's receiving that medication, so on that basis, there is no need to have a competency hearing.

When the case was called for trial, Mireles appeared before the trial judge who engaged in a colloquy with him and who then ruled that the competency hearing scheduled on his own motion was no longer necessary.

From March 17 to March 22, 1976, prior to the actual trial, the court heard arguments and testimony on the defendant's motion to suppress oral statements made by Mireles to the police, at which time Mireles contended that he did not have sufficient mental capacity or control to understand the *Miranda* warnings given him, or to knowingly and voluntarily waive his *Miranda* rights. Dr. Baker Howell testified at that hearing to the effect that Mireles did not appear to understand the gravity of the situation. The trial court denied the defendant's motion to suppress and the case proceeded to trial.

At the trial a number of witnesses took the stand including members of Mireles' family, testifying in support of Mireles' insanity defense. Mireles himself took the stand and asserted that he was insane at the time of the offense and related, among other things, his discharge from the Navy for bringing firearms aboard a fuel ship. Dr. Howell, Dr. Judas and Dr. Reifman also testified and gave somewhat conflicting testimony as to Mireles' insanity at the time of the killing and whose diagnoses, however, failed to establish that Mireles at the time of the offense was suffering from a mental disease or lacked the capacity to appreciate the criminality of his act or was unable to conform his conduct to the requirements of the law. The jury found Mireles guilty of murder and judgment was entered accordingly.

■ After trial, defense counsel moved for a new trial, claiming, in contradiction to his prior statements, that the trial court erred in not holding a competency hearing. The court denied the motion stating:

At no time during the trial did the court observe the defendant to be in any state that would indicate to the court there was anything unnatural or odd about the behavior of the defendant which would require the court to sui (sic) sponte to order a hearing into his fitness.

Moreover, all through the trial and up to this date, there has been no indication that the court should hold a hearing based upon any observations made by the attorneys out of the presence of the court, that is, the defense attorneys, by the State on any matters out of the presence of the court, nor did the court, in observing the defendant even as he

stands here today, have any reason to believe from the actions of the defendant or from anything that he has done or not done in the courtroom, that the defendant is not fit to stand trial.

While the determination for a *Pate* competency hearing should be made before and not after the trial, the findings of the state court after the trial concerning defendant's behavior during the trial confirmed his absence of doubt before the trial as to the necessity of a hearing. We recognize that such findings cannot be relied upon to eliminate the necessity of a pretrial hearing. *Pate,* 383 U.S. at 385–86, 86 S.Ct. at 842–43.

### Discussion

#### A

■■■ The issues in this case are governed by the principles enunciated in *Pate v. Robinson, supra,* as explained in *Drope v. Missouri, supra,* and by *Maggio v. Fulford,* 462 U.S. 111, 103 S.Ct. 2261, 76 L.Ed.2d 794 (1983). The necessity for a competency hearing varies in each case, depending upon a number of factors concerning defendant's behavior and inferences which might be drawn from psychiatrists' reports. "There are, of course, no fixed or immutable signs which invariably indicate the need for further inquiry to determine fitness to proceed ...." *Drope,* 420 U.S. at 180, 95 S.Ct. at 908. In *United States ex rel. Rivers v. Franzen,* 692 F.2d 491 (7th Cir.1982), we discussed the procedural due process requirements necessary to detect incompetence before a defendant is required to stand trial for a criminal charge. In that case we pointed out that the Supreme Court had delineated a separate procedural due process right of a defendant to a hearing on competence where there was a bona fide doubt of competency to stand trial. If he proceeds to trial, a defendant is entitled to substantive due process concerning his competency, a standard which is entirely separate and distinct from the standard of procedural due process before trial to which he is entitled, as discussed in *Pate. Reese v. Wainwright,* 600 F.2d 1085, 1093 (5th Cir.), *cert. denied,*

444 U.S. 983, 100 S.Ct. 487, 62 L.Ed.2d 410 (1979); *Holmes v. King,* 709 F.2d 965 (5th Cir.), *cert. denied,* — U.S. —, 104 S.Ct. 428, 78 L.Ed.2d 362 (1983). The question, then, is not whether the facts before the trial judge suggested that Mireles committed a crime while insane but whether these facts suggested that he was incompetent to stand trial. *Pate,* 383 U.S. at 389, 86 S.Ct. at 844. A distinction must be made between a mental illness and incompetency to stand trial. *See United States ex rel. Rivers v. Franzen,* 692 F.2d at 500.

■■■ It has long been recognized that failure to observe a defendant's right not to be tried while incompetent deprives him of his due process right to a fair trial. *Drope,* 420 U.S. at 172, 95 S.Ct. at 904. To determine the necessity for a procedural hearing before trial the emphasis is on a bona fide doubt as to competency. The due process test is "whether he has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding—and whether he has a rational as well as factual understanding of the proceedings against him." *Dusky v. United States,* 362 U.S. 402, 402, 80 S.Ct. 788, 789, 4 L.Ed.2d 824 (1960) *(per curiam ).* "[T]he question is often a difficult one in which a wide range of manifestations and subtle nuances are implicated. That they are difficult to evaluate is suggested by the varying opinions trained psychiatrists can entertain on the same facts." *Drope,* 420 U.S. at 180, 95 S.Ct. at 908. As to the testimony of psychiatrists, the Supreme Court wrote: "their testimony illustrates the uncertainty of diagnosis in this field and the tentativeness of professional judgment." *Greenwood v. United States,* 350 U.S. 366, 375, 76 S.Ct. 410, 415, 100 L.Ed. 412 (1956). Regardless of whether the psychiatrists' reports are given as a first or second report, the trial judge is permitted to draw proper inferences therefrom. *Drope,* 420 U.S. at 174, 95 S.Ct. at 905. In addition, he has a right to depend to some extent upon counsel who has a close contact with the defendant and can bring the issues into focus. Indeed, we have previously held in

*United States ex rel. Rivers v. Franzen* that counsel for the defendant "perhaps more than any other party or the court, is in a position to evaluate a defendant's ability to understand the proceedings...." 692 F.2d at 500. *See also Reese v. Wainwright,* 600 F.2d at 1092.

### B

■ The present Illinois statute specifically provides that when the evidence raises a "bona fide" doubt as to· a defendant's competence to stand trial, the judge, on his own motion, must conduct a sanity hearing. Ill.Rev.Stat.1975, ch. 38, par. 1005–2–1. While these state procedures are not constitutionally mandated, they are, if followed, adequate to insure the right of the accused not to be tried while incompetent. *Drope,* 420 U.S. at 172, 95 S.Ct. at 904. In fact, contrary to what the district court found, the Illinois Appellate Court specifically mentioned all psychiatrists' reports and the statement of the defense counsel in finding that there was "no abuse of discretion in the failure of the trial court to additionally order a fitness hearing."

■ Here the trial judge initially had a bona fide doubt concerning Mireles' competence to stand trial but subsequently changed his mind. A bona fide doubt is an objective test to determine whether the facts before the trial judge create a reasonable doubt in his mind as to a defendant's competency to stand trial. *Drope,* 420 U.S. at 172–73, 95 S.Ct. at 904–05. The doubt arose by reason of Mireles' background and behavior and the examinations of Dr. Langner and Dr. Reifman to the effect that Mireles was unfit for trial. Accordingly, the court set November 20, 1975 as the date for a competency hearing. This doubt was removed, however, when prior to that date Dr. Judas rendered a report that Mireles was fit to stand trial, and when Dr. Reifman rendered a subsequent report to the effect that Mireles was mentally fit to stand trial with medication. Added to the

above, counsellor Young, representing Mireles, specifically stated that he had no difficulty in obtaining Mireles' cooperation and that there was no further need for an inquiry. The attorney had the closest contact with Mireles and he never suggested that Mireles was incompetent to stand trial or that he should have a hearing.[1] In granting the writ the district court, contrary to the finding of the trial court, concluded that once a doubt was raised the trial court could not change its opinion. While it referred to subsequent psychiatrists' reports and representation of counsel, it nevertheless stated:

> these factors cannot be relied upon to dispense with a hearing on this issue once the trial court has determined that there exists a *bona fide* doubt concerning petitioner's competence. (*United States ex rel. Mireles v. Greer,* 528 F.Supp. at 1124.)

### C

■ We know of no reason why a doubt as to competency once raised in the mind of the trial court cannot be subsequently erased upon receipt of new evidence. Nor is there anything in the Illinois statutes or the requirements of due process that renders an initial doubt irrevocable and bars the subsequent dissipation of a doubt once raised. Any other approach would be based upon a mechanical determination of the existence of a bona fide doubt. The trial judge is only required to "act reasonably on the objective facts put before him." *Reese v. Wainwright,* 600 F.2d at 1092. Our conclusions on this issue are reinforced by the decisions in other cases. In *United States v. Clark,* 617 F.2d 180 (9th Cir.1980), defendant was committed to an institution when the district court found him unfit to stand trial after a competency hearing. Several weeks later, defendant was re-examined by a team of psychiatrists who found him to be competent at that time. There was no evidence to the

---

**1.** Counsel not only failed to challenge the defendant's competency but, on the contrary, denied the need for any inquiry. *See Pedrero v.* *Wainwright,* 590 F.2d 1383 (5th Cir.), *cert. denied,* 444 U.S. 943, 100 S.Ct. 299, 62 L.Ed.2d 310 (1979).

contrary at this later date. Accordingly, the district court set the case down for trial without holding another competency hearing, his previous doubts having been dissipated. The Ninth Circuit found the district court's decision to be justified and affirmed defendant's conviction. In *United States v. Caplan*, 633 F.2d 534 (9th Cir.1980), the defendant was charged with a marijuana violation. After a hearing, the court found him incompetent to stand trial and committed him to an institution. During commitment, he was subjected to psychiatric evaluation and found to be competent to stand trial. After trial, he was found guilty. On appeal, objection was made to the failure of the court to hold a hearing to determine whether the defendant's competency had been restored for trial purposes. In holding that the trial court did not err in denying such a hearing, the Court of Appeals rejected any mechanical operation of the rule that considers only the most recent report, but at the same time it stated that "the probative value of past reports may dissipate over time" and the court, "having received a report of present competence, must reassess the quality of past evidence." *Id.* at 539. *See also Chavez v. United States*, 656 F.2d 512, 517–18 (9th

Cir.1981); *People v. Nettles*, 32 Ill.App.3d 1082, 338 N.E.2d 199 (1975). Petitioner relies on *Pate v. Smith*, 637 F.2d 1068 (6th Cir.1981), and *Silverstein v. Henderson*, 706 F.2d 361 (2d Cir.), *cert. denied, —— U.S. ——*, 104 S.Ct. 195, 78 L.Ed.2d 171 (1983), which we find factually distinguishable.[2]

Finally, we find that the district court gave insufficient deference to the findings of the state court concerning the non-existence of a bona fide doubt of competency. This was error. The Supreme Court has always held that the federal courts in habeas corpus proceedings must "show a high measure of deference to the fact findings made by the state courts." *Sumner v. Mata*, 455 U.S. 591, 598, 102 S.Ct. 1303, 1307, 71 L.Ed.2d 480 (1982); *Marshall v. Lonberger*, 459 U.S. 422, 103 S.Ct. 843, 850, 74 L.Ed.2d 646 (1983); *Rushen v. Spain, —— U.S. ——*, 104 S.Ct. 453, 456, 78 L.Ed.2d 267 (1983). Indeed, since the district court's decision, the Supreme Court in *Maggio v. Fulford*, 462 U.S. 111, 103 S.Ct. 2261, 76 L.Ed.2d 794 (1983) (three Justices dissenting), has gone further. It applied the presumption of correctness under section 2254(d)[3] to what we

---

**2.** Petitioner argues that *Pate v. Smith*, 637 F.2d 1068 (6th Cir.1981), and *Silverstein v. Henderson*, 706 F.2d 361 (2d Cir.), *cert. denied, —— U.S. ——*, 104 S.Ct. 195, 78 L.Ed.2d 171 (1983), are authorities supportive of the district court decision which should be followed. We disagree. In *Pate v. Smith*, the trial court first found reasonable grounds to believe that the defendant was incompetent and ordered an examination by a forensic psychiatric unit, which, however, returned a report that the defendant was competent to stand trial. In mid-trial Pate had to be removed from the court because of violence. The trial judge then consulted the last psychiatric report and based upon his twenty years knowledge of the petitioner he decided to proceed with the trial. Reversing the trial court, the Court of Appeals held that the court must always be alert to circumstances suggesting a change in defendant's competence and remanded the case to determine if a retrospective determination could be made as to petitioner's competence or whether a new trial should be granted. In *Silverstein v. Henderson*, the defendant pleaded guilty to robbery. After he was arrested he was examined by two psychiatrists who found that he was incompetent to

stand trial. One week later a third psychiatrist found the defendant competent to stand trial based upon a fifteen minute interview. The trial court accepted this last report and at the same time accepted defendant's plea of guilty. The issue of competence was not raised upon appeal, and the district court denied habeas corpus relief. The Circuit Court reversed, holding that in light of undisputed facts there was sufficient evidence of incompetence to require a hearing, and rejecting the last report as insufficient to eliminate the need for such a hearing in view of Silverstein's long institutional history and earlier diagnosis. In neither of these cases were there two subsequent psychiatrists' reports or statements of competence by defendant's counsel or subsequent confirmation by the trial court predicated upon its observation of defendant during trial.

**3.** The pertinent portion of 28 U.S.C. § 2254(d) reads as follows:

In any proceeding instituted in a Federal court by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination

heretofore considered at least a mixed question of law and fact with respect to the issue of competency.[4] In that case, the Louisiana state court, in a murder trial, held that the accused was competent to stand trial although there was an eleventh hour motion for the appointment of a competency commission, based upon a psychiatrist's opinion of incompetency after a one-hour interview with the accused. The holding of the trial court was affirmed by the Louisiana Supreme Court which stated that the trial court's findings were "amply supported by the record." A subsequent habeas corpus application was denied by the United States District Court, whereupon the Court of Appeals for the Fifth Circuit reversed the district court, holding that the state court's determination lacked support in the record and, further, that Fulford did not possess the mental competency to participate in his trial. *Fulford v. Maggio,* 692 F.2d 354, 361 (5th Cir.1982). The Supreme Court, in turn, reversed, concluding that the Court of Appeals "erroneously substituted its own judgment as to the credibility of witnesses for that of the Louisiana courts ...," 103 S.Ct. at 2262, and that if "fairly supported by the record," 28 U.S.C. § 2254(d)(8), the factual conclusions of the state court should not be overturned by a federal habeas corpus court, *id.* at 2264. *See Patterson v. Cuyler,* 729 F.2d 925, 931 (3d Cir.1984).

█ Accordingly, we find that the findings and conclusions of the state court were, pursuant to the requirements of 28 U.S.C. § 2254(d)(8), "fairly supported by the record" and are presumed to be correct.

Petitioner has failed to establish by any convincing evidence that the findings of the state court did not have such support. Consequently, we conclude that the state court's refusal to grant a competency hearing did not deprive Mireles of his constitutional rights and that the district court abused its discretion in granting the writ. The judgment of the district court is therefore REVERSED.

after a hearing on the merits of a factual issue, made by a State court of competent jurisdiction in a proceeding to which the applicant for the writ and the State or an officer or agent thereof were parties, evidenced by a written finding, written opinion, or other reliable and adequate written indicia, shall be presumed to be correct, unless the applicant shall establish ... (8) ... that part of the record of the State court proceeding in which the determination of such factual issue was made, pertinent to a determination of the sufficiency of the evidence to support such factual determination, is produced as provided for hereinafter, and the Federal court on a

consideration of such part of the record as a whole concludes that such factual determination is not fairly supported by the record....

4. Our statement in *United States ex rel. Rivers v. Franzen,* 692 F.2d 491, 497 (7th Cir.1982), that the question of bona fide doubt is a conclusion of law or a mixed determination of law and fact, is no longer applicable in habeas corpus proceedings. *Cf. United States v. Johns,* 728 F.2d 953, 956 (7th Cir.1984), holding that on appeal the standard of "clearly erroneous" should be applied to the court's findings after a competency hearing originating in the district court.