**Jack ESTOCK, Petitioner–Appellee,**

v.

**Michael P. LANE,**
**Respondent–Appellant.**

No. 87–2532.

United States Court of Appeals,
Seventh Circuit.

Argued Dec. 7, 1987.

Decided March 16, 1988.

Order on Motion to Modify Opinion
April 22, 1988.

David E. Bindi, Office of Atty. Gen., Chicago, Ill., for petitioner-appellee.

Thomas Peters, Murphy, Peters, Davis & O'Brien, Chicago, Ill., for respondent-appellant.

Before CUMMINGS, CUDAHY and MANION, Circuit Judges.

PER CURIAM.

On November 1, 1982, petitioner Jack Estock appeared before the Circuit Court of Kane County, Illinois, changed his prior not guilty plea, pled guilty to the charge of rape and received a twelve-year sentence of imprisonment.[1] At that time, neither the assistant public defender appointed to represent him nor the judge who accepted his plea and sentenced him knew that six days earlier Estock had tied a sheet around the bars of his cell and around his neck in an attempt to hang himself.

Contending that Estock was incompetent to stand trial, his new counsel subsequently filed a petition for post-conviction relief, a motion to withdraw the guilty plea and a motion for a psychiatric examination. The trial court, Judge Nickels presiding rather than Judge Schnake, who had taken the plea, held that Estock failed to raise a bona fide doubt as to his incompetence at the time the plea was entered and therefore denied all three motions. The Appellate Court of Illinois affirmed the orders and the Illinois Supreme Court denied leave to appeal. However, in reviewing Estock's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, the district court found that, contrary to the finding of the trial court, a bona fide doubt existed as to Estock's fitness to plead guilty. The district court then ordered an evidentiary hearing from which it determined that Estock was incompetent to plead guilty. The court therefore granted Estock's writ of habeas corpus. We affirm.

I

■ The initial issue presented by the grant of the petition is whether the district court accorded the proper deference to the

decision of the state court regarding the existence of a bona fide doubt as to Estock's competence to stand trial. Although cases in this circuit have held that "[t]he question of bona fide doubt is a conclusion of law, or at the least a mixed determination of law and fact," *United States* ex rel. *Rivers v. Franzen*, 692 F.2d 491, 497 (7th Cir.1982), this conclusion is no longer applicable in habeas corpus proceedings. *United States* ex rel. *Mireles v. Greer*, 736 F.2d 1160, 1168 n. 4 (7th Cir.1984). Instead, in a habeas corpus proceeding, a state court's finding of no bona fide doubt is a factual finding entitled to a presumption of correctness under 28 U.S.C. § 2254(d). *Maggio v. Fulford*, 462 U.S. 111, 116–17, 103 S.Ct. 2261, 2263–64, 76 L.Ed.2d 794 (1983) (*per curiam*); *United States* ex rel. *Foster v. DeRobertis*, 741 F.2d 1007, 1011 (7th Cir.1984), certiorari denied, 469 U.S. 1193, 105 S.Ct. 972, 83 L.Ed.2d 975; *Mireles*, 736 F.2d at 1167–68. This shift follows the trend of recent Supreme Court cases to accord particular determinations by state courts a presumption of correctness. See *Perri v. Director, Department of Corrections, State of Illinois*, 817 F.2d 448, 451 n. 3 (7th Cir.1987), and cases cited therein.

■ However, this presumption of correctness is lost if "such factual determination is not fairly supported by the record." 28 U.S.C. § 2254(d)(8). To assess whether the determination is fairly supported by the record the district court must consider "that part of the record of the State court proceeding in which the determination of such factual issue was made." *Id.* Accordingly, we consider the evidence that was before Judge Nickels in the state court and the record of the proceedings before him.

On April 18, 1983, prior to the transfer to Judge Nickels, Estock filed, as his *pro se* petition for post-conviction relief, a preprinted sample *petition form* with the relevant information printed above the instructions. The same day, Judge Schnake, finding a conflict in the appointment of a public

---

1. At the oral argument, we were advised that petitioner is scheduled for release six months from that date.

defender, ordered the appointment of a special public defender to prosecute the petition on behalf of Estock. The new counsel for Estock subsequently filed a petition for a psychiatric examination and an addition to the petition for post-conviction relief contending that on the date the plea was entered, Estock was mentally unstable and unfit to comprehend the consequences of entering a plea of guilty. In addition to the petition for post-conviction relief and the documents in support thereof, counsel for Estock also filed a motion pursuant to Illinois Supreme Court Rule 604(d) for leave to withdraw Estock's guilty plea and vacate his conviction.

■ In support of the petition and motion, counsel for Estock submitted documentation of the suicide attempt. She also filed an affidavit of prior counsel stating that at the time of the hearing he was unaware of the suicide attempt and that if he had been aware of it, he would have advised the court of the attempt and moved the court to appoint a psychiatric expert to evaluate Estock for the purpose of determining his competence to stand trial, assist in his own defense and understand the entry of a plea of guilty. Finally, she filed psychiatric evaluations of Estock. The first, dated November 5, 1982, by Dr. Joseph Finney at the Illinois Department of Corrections Adult Reception and Classification Services, described Estock as a "[p]aranoid personality, borderline on the psychotic" and ordered that Estock be immediately transferred as an emergency case to Menard Psychiatric Center. Two subsequent reports, dated November 10 and 17, 1982, from Menard Psychiatric Center describe Estock as "marginally oriented" and evaluate his insight and judgment as poor.

Judge Nickels, without holding an evidentiary hearing, held that Estock failed to raise a bona fide doubt as to his competence at the time the plea was entered and therefore denied all three motions pending before him. On habeas review, the district court found the finding of no bona fide

doubt not supported by the record. We agree with the district court's assessment. Because the evidence before the state court was sufficient to raise a bona fide doubt, the state court's finding otherwise is not fairly supported by the record and is therefore not entitled to a presumption of correctness.

Although this finding alone is sufficient to remove the presumption of correctness, the position and conduct of the deciding judge contradict the rationale for the presumption. In *Maggio* the Supreme Court stressed that the federal habeas court owes the state trial court deference because:

> " 'Face to face with living witnesses the original trier of the facts holds a position of advantage from which appellate judges are excluded. In doubtful cases the exercise of his power of observation often proves the most accurate method of ascertaining the truth.... How can we say the judge is wrong? We never saw the witnesses....' "

*Maggio*, 462 U.S. at 118, 103 S.Ct. at 2264 (quoting *United States v. Oregon Medical Society*, 343 U.S. 326, 339, 72 S.Ct. 690, 698, 96 L.Ed. 978 (1952), quoted in *Marshall v. Lonberger*, 459 U.S. 422, 434, 103 S.Ct. 843, 851, 74 L.Ed.2d 946 (1983)).[2] If Judge Nickels had seen Estock face to face at the time of his pleading or had held an evidentiary hearing and seen live witnesses face to face, it might be difficult to look only at the documentary evidence and conclude that Judge Nickels' finding was not fairly supported by the record. But such is not the case.

Although nominally a trial court, in this case Judge Nickels was in the position of a reviewing judge. He was not the judge who heard the initial plea and therefore had no opportunity to observe the defendant, evaluate his demeanor and determine his competence. He did not hold an evidentiary hearing, so that no testimony was heard and no findings of fact were made. He only reviewed the pleadings, particular-

---

**2.** The ability to observe the demeanor of witnesses is not, of course, the only reason for deferring to the factual findings of the state court. The interests of comity and federalism, for example, also urge deference. However, as acknowledged in *Maggio*, the advantage of face-to-face contact is an important factor and it is absent in this case.

ly the transcript of the plea. One departure from the usual manner of review did occur. Judge Nickels took into consideration his personal knowledge of Estock's defense counsel at the time of the plea, Mr. McCulloch, and concluded that if Mr. McCulloch "had any inkling or inclination or any thought that the defendant might not be competent, I feel—I feel sure that Mr. McCulloch would not have permitted the defendant to enter into the plea" (R. 164). This conclusion, derived from Judge Nickels' personal knowledge of Estock's first lawyer, directly contravened that person's own affidavit.

In evaluating the record before him and reaching his determination of no bona fide doubt, Judge Nickels did not rely on any extrinsic factors, such as the demeanor of witnesses, that were not apparent to the district court when it independently reviewed the record. The only extrinsic factor he considered, his personal belief as to how prior counsel would have acted, is unsupportable in view of the latter's contrary affidavit. Thus although the absence of face-to-face interaction is not determinative, it buttresses our conviction that the presumption of correctness is inapplicable here.

## II

■ Having disposed of the presumption of correctness, the second issue presented is whether the district court appropriately granted the petition for habeas corpus. In *Bilyew v. Franzen*, 686 F.2d 1238 (7th Cir. 1982), we set out the procedures to be followed by a district court on habeas review in determining whether a defendant was competent to stand trial. See also *United States* ex rel. *Lewis v. Lane*, 822 F.2d 703, 706–707 (7th Cir.1987). Initially, the district court must determine whether it is still possible to hold a meaningful retrospective hearing to determine if the defendant was fit to stand trial at the time of the original state proceedings. *Bilyew*, 686 F.2d at 1246. "The passage of even a considerable amount of time may not be an insurmountable obstacle if there is sufficient evidence in the record derived from knowledge contemporaneous to trial." *Id.* at 1247. If such evidence exists and a retrospective hearing would be meaningful,

the district court should hold an evidentiary hearing. At that hearing the burden of proof would be on the state to show by a preponderance of the evidence that the defendant was fit at the time of the original trial. *Id.* The Illinois Supreme Court has succinctly stated the reason for giving the State the burden:

> Let us assume that defendant is in fact unable to cooperate with counsel and present his case in a rational manner. It would be a strange rule, indeed, to impose upon him the burden of proving his own incompetence, for the very disability which he would be seeking to prove renders him incapable, either logically or legally, of sustaining the burden of proof.

*Id.* at 1245 (quoting *People v. Bender*, 20 Ill.2d 45, 53–54, 169 N.E.2d 328 (1960)). If the state fails to meet this burden, or if the court determines that it is too late to hold a retrospective hearing, the district court must grant the petitioner's request for a writ of habeas corpus.

■ Judge Baker followed the proper procedure. Based on consideration of the records and testimony, he first determined that it was not too late to hold a retrospective hearing. Accordingly, he held such a hearing at which he heard psychiatric testimony and considered psychiatric records from November 1982. The court correctly allowed and considered the additional testimony because "further medical or psychiatric testing may be relevant and advisable to ascertain [the defendant's] condition at the time of the original state court proceedings." *Bilyew*, 686 F.2d at 1238. The district court found that in November 1982, the examining psychiatrist at the State of Illinois Department of Corrections Adult Reception and Classification Services considered Estock to be a "paranoid personality, borderline on psychotic," and had ordered Estock transferred as an emergency case to the psychiatric center at Menard. The testimony offered at the hearing below, which the court credited, was that it was doubtful that Estock could have comprehended the right to a jury trial, the right not to incriminate himself, the right to confront witnesses and the state's burden to prove his guilt beyond a reasonable

doubt. The court also considered the transcript of the proceedings before Judge Schnake at the time the guilty plea was taken and concluded from Estock's answers that he was not acting in an understanding and comprehensible manner. Finally, the district court considered that nothing in the record indicates that either Judge Schnake, the prosecutor or Estock's original defense attorney was aware of Estock's suicide attempt. Based on all of the above, the court understandably concluded that the state had "not shown by a preponderance of the evidence that on November 1, 1982 Estock had a 'sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding' and that he had 'a rational as well as factual understanding of the proceedings against him.'" Order of August 28, 1987 at 8, quoting the test for competency to stand trial in *Dusky v. United States*, 362 U.S. 402, 80 S.Ct. 788, 4 L.Ed. 2d 824 (1960). We may reverse such a factual finding only if it is clearly erroneous. For the reasons addressed above, it is not.

### III

The state's final contention is that the district court abused its discretion when it denied the state's request for a continuance of the scheduled evidentiary hearing. On May 6, 1987, the court set an evidentiary hearing for August 14, 1987. On August 11, 1987, three months after the date had been set and three days before the scheduled hearing, the state moved for a two-week continuance. Although the court initially allowed the motion, it vacated that order and the hearing was reset and proceeded as originally scheduled.

The state acknowledges in its brief that the decision to grant or deny a continuance is within the discretion of the district court. The court did not abuse its discretion here. At the presentation of the motion of continuance, counsel for the state represented to the court that its expert witness, Dr. Noble Harrison, had originally agreed to testify at the hearing on August 14, 1987 at the scheduled time of 1:30 p.m. However, Dr. Harrison informed counsel three days before the hearing that a subsequent professional obligation would prevent him from testifying as scheduled. The court observed that the witness had made and broken a commitment to appear on the scheduled date and offered to cooperate with the state and issue a subpoena for him. The state, out of deference to the professional commitments of its expert witness, refused the court's subpoena offer. The court therefore denied the motion to continue, but expressly stated that the state might have a further opportunity to present additional evidence at the conclusion of the hearing if it should seek a continuance. The state never sought such a continuance. In light of the late date of the motion, the court's willingness to assist the state by subpoenaing its expert and the absence of any subsequent request by the state to present further evidence as encouraged by Judge Baker, we hold that the court did not abuse its discretion when it denied the state's motion for a continuance.

The judgment of the district court is affirmed in all respects, so that the petitioner is to be released unless he is retried within 120 days.

### ORDER ON MOTION TO MODIFY OPINION

On consideration of the motion to modify the terms of the *per curiam* opinion of March 16, 1988, and the respondent having filed no objection thereto,

IT IS HEREBY ORDERED that petitioner shall be released from custody on his maximum release date, whether it is May 13 or 15, 1988.