PUBLISH

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 96-3725
_____

D. C. Docket No. 94-165-Civ-Oc-10

SONNY BOY OATS,

Petitioner-Appellant,

versus

HARRY K. SINGLETARY, JR.,
Secretary, Florida Department of Corrections,

Respondent-Appellee.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

(May 19, 1998)

Before ANDERSON, DUBINA and CARNES, Circuit Judges.

ANDERSON, Circuit Judge:

Appellant Sonny Boy Oats ("Oats"), a prisoner awaiting execution on Florida's death row, appeals from the district court's denial of his petition for a writ of habeas corpus. For the reasons stated below, we affirm the district court's decision to deny the writ.[1]

## I. FACTS AND PROCEDURAL HISTORY

On December 20, 1979, Jeanette Dyer, the cashier at a convenience store near Ocala, Florida, was killed during a robbery of the store. The cause of her death was a single bullet fired from approximately one foot away that penetrated her right eye and her brain. On December 24, 1979, a police officer observed an automobile with two suspicious looking occupants in the vicinity of another convenience store in Ocala. As the officer approached the car, it sped away at a high rate of speed. The officer gave chase. The fleeing car soon crashed and the occupants dispersed. Shortly thereafter, Donnie Williams was arrested as a suspect in the high-speed chase, transported to the Marion County Jail, and gave a statement to the police implicating the appellant Sonny Boy Oats in the murder of Jeanette Dyer. Subsequently, Oats was arrested as a suspect

---

[1] Oats' petition for writ of habeas corpus was filed before April 24, 1996, the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), and thus the AEDPA standard of review provisions are not applicable. See Lindh v. Murphy, – U.S. –, 117 S. Ct. 2059, 2068 (1997); see also Neelley v. Nagle, 138 F.3d 917, 921 (11th Cir. 1998); Hardwick v. Singletary, 122 F.3d 935, 936 (11th Cir. 1997), vacated in part on reconsideration, 126 F.3d 1312 (11th Cir. 1997).

in the high-speed chase and given <u>Miranda</u> warnings. During the interview that followed, Oats admitted his involvement in the chase and stated he had thrown his firearm away during the chase. The firearm was later discovered on the roadside near the location described by Oats.

In his interview with the police, Oats also admitted his involvement in an ABC liquor store robbery and shooting that had occurred on December 19, 1979,[2] one day prior to the robbery and murder of Jeanette Dyer. On December 28, 1979,[3] during a tape recorded interview, Oats again confessed to the ABC liquor store robbery and shooting, and also admitted robbing and killing Jeanette Dyer on December 20. Ballistics tests conducted on the gun recovered from the roadside established that it was the same weapon used in both the ABC liquor store and Jeanette Dyer shootings.

Oats was indicted on two counts for robbery and first degree murder, arising out of the killing of Jeanette Dyer on December 20, 1979. Oats was also charged separately in another case for the robbery and attempted murder at the ABC liquor store that occurred on December 19, 1979. During February and March of 1980, Oats was examined, at the request of trial counsel, by three separate psychiatrists, Drs.

---

[2] In the ABC liquor store robbery, Oats robbed the store's clerk, Eric Slusser, and then shot Slusser in the head.

[3] This second interview occurred four days after Oats' first interview because Oats escaped from police custody during a visit to his mother's house and was not recaptured for three days.

3

Frank Carrera, Rafael Gonzalez, and Fausto Natal, all of whom reported to the court and to Oats' counsel that Oats was sane at the time of the offenses and competent to stand trial.[4]

In early June 1980, Oats was tried in a separate proceeding for the ABC liquor store robbery and shooting and was convicted of robbery with a firearm and attempted murder in the first degree.[5] On June 14, 1980, Oats escaped from the Marion County Jail. He was recaptured approximately six months later in Texas, and was returned to Florida for trial in the instant capital case.[6]

On February 6, 1981, the jury in the instant case found Oats guilty of first degree murder and robbery with a firearm. After hearing the evidence relevant to sentencing, the same jury rendered an advisory sentence of death. On February 10, the trial judge followed the jury's recommendation and imposed the death sentence for the murder charge and ninety-nine years imprisonment for the robbery charge.

---

[4] Additional facts regarding these psychiatric evaluations and the evaluations of other doctors will be discussed later in this opinion.

[5] The ABC liquor store case was noncapital and thus proceeded at a faster pace than the instant case.

[6] While on escape from prison, Oats robbed a liquor store in New York and stabbed the clerk numerous times in the head, neck, and back.

In Oats' direct appeal of his conviction and sentence,[7] the Florida Supreme

Court affirmed Oats' conviction, but remanded for resentencing and a reweighing of

the aggravating circumstances by the trial judge because the trial judge erred in his

original determination of three of the aggravating circumstances.  Oats v. State, 446

So. 2d 90, 95 (Fla. 1984).  On April 26, 1984, following the remand from the Florida

Supreme Court, the state trial court conducted another sentencing hearing.  At the

resentencing hearing, Oats' attorney objected to the resentencing and made a motion

seeking the appointment of experts to determine Oats' sanity and competence.  The

trial judge denied this motion based on the judge's observations of Oats' demeanor at

that time and during prior proceedings.  The trial judge then reweighed the valid

aggravating circumstances against the single mitigating circumstance and reimposed

---

[7] While Oats' appeal of his conviction and sentence in the instant case was pending before the Florida Supreme Court, Florida's Fifth District Court of Appeal reversed Oats' convictions in the ABC liquor store case because the trial court had failed to instruct the jury concerning the applicable ranges of punishment as required by a Florida rule of criminal procedure.  Oats v. State, 407 So. 2d 1004 (Fla. Dist. Ct. App. 1981). On February 9, 1982, after a re-trial, Oats was convicted of robbery and attempted second degree murder.  That conviction was affirmed in Oats v. State, 434 So. 2d 905 (Fla. Dist. Ct. App. 1983), prior to the Florida Supreme Court's resolution of Oats' direct appeal in the instant capital case.

the death penalty, which was affirmed by the Florida Supreme Court.[8]  See Oats v.

State, 472 So. 2d 1143 (Fla. 1985), cert. denied, 474 U.S. 865, 106 S. Ct. 188 (1985).

On October 7, 1987, Oats filed a motion for post-conviction relief in the state

trial court pursuant to Fla. R. Crim. P. 3.850, and in May 1989, filed an original

petition for a writ of habeas corpus in the Florida Supreme Court.  Following the

signing of a death warrant by the Governor in 1989, the state trial court granted a stay

of execution and subsequently conducted an evidentiary hearing on Oats' Rule 3.850

motion.  This Rule 3.850 hearing lasted eleven days over a period from February 19 to

June 5, 1990, and primarily concerned whether Oats' trial counsel were

constitutionally deficient in their representation of Oats.  The state trial court denied

Oats' Rule 3.850 petition in November 1990.  The Florida Supreme Court affirmed the

trial court's denial of Oats' Rule 3.850 motion and denied Oats' original state habeas

corpus petition in Oats v. Dugger, 638 So. 2d 20 (Fla. 1994), cert. denied, 513 U.S.

1087, 115 S. Ct. 744 (1995).  Oats then filed the instant federal habeas action pursuant

to 28 U.S.C. § 2254.  The district court denied Oats' petition without holding an

evidentiary hearing.

## II. DISCUSSION

---

[8] The trial judge weighed the mitigating circumstance of age against the aggravating circumstances of (1) Oats' prior violent felony conviction, (2) murder during the commission of a robbery, (3) the murder was committed to avoid lawful arrest, and (4) the murder was cold, calculated, and premeditated.

A. <u>The Ineffective Assistance of Counsel Claims</u>

The law regarding collateral review of ineffective assistance of counsel claims under the Sixth Amendment is well settled. In order to obtain habeas corpus relief with respect to a conviction or a death sentence based on ineffective assistance of counsel, the defendant must show both (1) that the identified acts or omissions of counsel were deficient, or outside the range of professionally competent assistance, and (2) that counsel's deficient performance prejudiced the defense such that, but for counsel's unprofessional errors, there is a reasonable probability that the result of the proceeding would have been different. <u>Strickland v. Washington</u>, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984). <u>See also</u> <u>Bolender v. Singletary</u>, 16 F.3d 1547, 1556 (11th Cir. 1994). When applying <u>Strickland</u>, we are free to dispose of ineffectiveness claims on either of its two grounds. <u>See</u> <u>Strickland</u>, 466 U.S. at 697, 104 S. Ct. at 2069. Furthermore, we note that under the rules and presumptions set down in <u>Strickland</u> and its progeny, "'the cases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are few and far between." <u>Waters v. Thomas</u>, 46 F.3d 1506, 1511 (11th Cir. 1995) (en banc) (quoting <u>Rogers v. Zant</u>, 13 F.3d 384, 386 (11th Cir. 1994)).

Oats alleges that he was deprived of his Sixth Amendment right to the effective assistance of counsel in a variety of ways throughout his defense of the criminal proceeding in state court. The primary focus of Oats' ineffective assistance of counsel claims is his assertion that, at all material times in this case, he was mentally retarded

with organic brain damage, complicated by both physical and psychological abuse as a child and by his own abuse of alcohol and other substances. Oats claims that his attorneys failed to adequately and fully present evidence of his mental deficiencies at numerous proceedings in the state trial court.

The record reveals that, during the pendency of the case in state court, a minimum of eight different mental health experts testified and/or issued reports concerning Oats' mental capacity. In February and March, 1980, during the pretrial stages of the ABC liquor store case and the instant capital case, Oats was examined separately by three different court-appointed psychiatrists, Drs. Frank Carrera, Rafael Gonzalez, and Fausto Natal. The examinations by these court-appointed psychiatrists were performed prior to the ABC liquor store case at the request of Oats' trial counsel.[9]

---

[9] Like the state court that denied Oats' request for post-conviction relief under Rule 3.850, we conclude that the fact that the psychiatrists' evaluations of Oats were performed in connection with the companion ABC liquor store case does not limit the relevance of those evaluations in regard to the instant case. Drs. Carrera, Gonzalez, and Natal examined Oats between February 17 and March 25, 1980, and the trial in the instant case was conducted in February 1981. However, if Oats had not escaped from custody in June 1980, he presumably would have been tried as his counsel requested in July 1980. No evidence has been presented to suggest any change in Oats' competency from March 1980 to February 1981. Moreover, one of Oats' attorneys at trial in the instant case was also Oats' attorney in the ABC trial.

All three psychiatrists reported then that Oats was mentally competent at the time of the offenses and was mentally competent to stand trial.[10]

The remaining experts became involved in the case during the 1990 post-conviction Rule 3.850 hearings before the state trial court. At this time, defense experts Drs. Robert Phillips and Joyce Carbonell testified, and Dr. Harry Krop issued a report concluding that Oats was mentally retarded with organic brain damage.[11] They

---

[10] Dr. Carrera evaluated Oats on February 19, 1980, apparently in regard to both the ABC liquor store case and the instant capital case. Dr. Carrera concluded that (1) Oats was of low average to borderline intelligence, (2) Oats was competent to assist in his defense and stand trial, and (3) at the time of the alleged crimes Oats was legally sane.

Dr. Natal evaluated Oats on March 18, 1980, in regard to the ABC liquor store case. Dr. Natal concluded that (1) Oats' intellectual level seemed to be in the "dull, normal range," (2) Oats "is competent to stand trial and knows the nature and consequences of the legal situation he is involved in and can work with counsel in preparing a rational defense," (3) with respect to Oats' state of mind at the time of the alleged crime, he "was not suffering from a defect of reason resulting from a disease of the mind" and knew the nature and quality of the act was wrong, and (4) Oats understood the Miranda warnings and was psychologically able to waive his rights.

Dr. Gonzalez evaluated Oats in late March 1980, in regard to the ABC liquor store case and concluded that Oats "is not at present time psychotic and that he can be of assistance to his attorney in the process of preparation of his defense."

[11] Dr. Phillips testified that he believed that Oats' brain damage was the result of a longstanding history of alcohol and drug abuse, inhalation of liquid paper, and multiple open and/or closed head injuries during childhood.

9

also opined that Oats was incompetent to stand trial in 1980,[12] incompetent at

resentencing in 1984, and incapable of knowingly waiving his <u>Miranda</u> rights at the

time of his confessions. However, the conclusions reached by the defense experts were

challenged by Drs. Charles Mutter and Leonard Haber, who testified on behalf of the

State at the Rule 3.850 hearings. Drs. Mutter and Haber contradicted the defense

experts concerning the degree of Oats' brain damage and the level of his intelligence,[13]

---

[12] Unlike Drs. Phillips and Carbonell, Dr. Krop did not specifically conclude that Oats was incompetent to stand trial and unable to understand and waive his <u>Miranda</u> rights in 1980. However, he concluded that it was likely that Oats would have had great difficulty in assisting his counsel at the time of his trial. Dr. Krop and Dr. Carbonell reported that Oats scored approximately 57 and 61 on IQ tests, placing him in the mildly mentally retarded range of functioning, and that he was at a beginning third grade level in terms of basic academic skills. These conclusions are inconsistent with Department of Corrections records indicating that Oats scored a 93 on an IQ test in 1976, and Dr. Carrera's testimony that Oats' scores on basic academic skills tests put him at a seventh-grade level in terms of classroom information. Furthermore, Dr. Charles Mutter testified that, in his opinion, Oats' ability to process material and his knowledge of language indicated that Oats "was smarter than he was showing on the tests."

[13] Dr. Mutter first challenged the defense experts' assumption that Oats' brain damage was partly the result of sniffing liquid paper. Dr. Mutter testified that this assumption was flawed because the inhalation of the solvents in liquid paper may cause severe liver damage and gastrointestinal problems, but there is no medical evidence that the solvents produce brain damage. Dr. Mutter also testified that Dr. Krop's conclusion that Oats suffered from diffuse brain damage was contradicted to some degree by Dr. Krop's

10

and both concluded that Oats was competent to stand trial in 1980, competent at resentencing in 1984, and capable of making a knowing and intelligent waiver of his Miranda rights.

1. Oats' Competency to Stand Trial

Oats contends that his trial counsel were ineffective in failing to adequately argue that he was incompetent to stand trial and in failing to provide to the court-appointed psychiatrists, Drs. Carrera, Gonzalez, and Natal, information concerning his background and mental health history which potentially could have altered the psychiatrists' opinions concerning his competency to stand trial.[14] The second prong of

conclusion that Oats was orientated to time, place, and person. Based on his evaluation of Oats, Dr. Mutter concluded that Oats suffered from a "minimal organic disturbance" in expressing himself in terms of words and certain types of vocabulary, but that Oats understood the questions asked in the evaluation, his answers were responsive and appropriate, and Oats' psychomotor activity and other body language were in context with an individual who does not show "any kind of frank organic impairment." Finally, Drs. Mutter and Haber concluded that Oats' IQ scores, as reported by defense experts, did not reflect Oats' actual mental functioning and that Oats demonstrated an ability to use certain language and appreciate the nuances of the doctors' questions that were "far beyond the ability of an individual with a full scale IQ of 57."

[14] Oats also contends that his trial counsel were incompetent by failing to inform the court-appointed psychiatrists of trial counsel's concerns regarding Oats' competency to stand trial and ability to participate in his defense. In light of the new information provided by Oats' collateral counsel (including in particular a new IQ test which would

11

the Strickland test requires Oats to show that if his trial counsel had performed as he argues they should have, there is a reasonable probability that the trial judge would have determined that Oats was incompetent to stand trial. We conclude that Oats fails this prejudice prong of Strickland. After the eleven day Rule 3.850 hearings in which Oats was able to fully introduce the evidence concerning his family background, his mental health history, and the opinions of defense mental health experts, the state court judge found "no reasonable doubt about [Oats'] competency."[15] The state court's finding that Oats was competent to stand trial is a factual finding entitled to a presumption of correctness, and thus will not be overturned on federal habeas review unless the state court's finding is not fairly supported by the record. See Demosthenes v. Baal, 495 U.S. 731, 735, 110 S. Ct. 2223, 2225 (1990) (concluding that state court's finding that defendant was competent to waive his right to pursue further post-conviction review of his claims was entitled to a presumption of correctness on federal

---

place Oats in the category of borderline mentally retarded), Drs. Carrera and Gonzalez gave testimony at the Rule 3.850 hearing that backtracked to some degree from their previous testimony that Oats was competent to stand trial.

[15] The state court specifically found that Oats "knew the charges against him and possible penalties; that he testified rationally and relevantly at the suppression hearing; that he was able to follow and understand the testimony of witnesses at trial; and that he understood his subpoena power to call witnesses and the roles of the judge, jury, prosecutor and defense counsel." Order Denying Rule 3.850 Relief, at 4 (November 21, 1990).

12

habeas corpus review); <u>Maggio v. Fulford</u>, 462 U.S. 111, 117, 103 S. Ct. 2261, 2264 (1983) (concluding that state court's finding of competency to stand trial was "fairly supported by the record"); <u>United States v. Hogan</u>, 986 F.2d 1364, 1372 (11th Cir. 1993) (concluding that state court's finding of competency to stand trial is a finding of fact reviewed under a clearly erroneous standard).

We conclude that the state court's finding is fairly supported by the record. Although defense experts testified and/or issued reports opining that Oats' alleged mild mental retardation, organic brain damage, and history of substance abuse rendered him incompetent to stand trial, this evidence was contradicted by (1) the conclusions of the State's mental health experts, (2) Oats' own coherent testimony at his trial and at the pretrial suppression hearing,[16] (3) Oats' confession to the police in which he was able to accurately describe details regarding the two offenses,[17] and (4) the circumstances

---

[16] We note that during the cross-examination of his mother during the penalty phase of trial, Oats appeared to be alert and listening attentively to the testimony. Oats' mother testified that the co-defendant in the ABC case told her that he had shot the liquor store clerk, dropped the gun because he was wearing gloves, and then Oats picked up the gun. After the state attorney stated to Oats' mother that Oats' fingerprints were found on the gun, Oats interrupted and stated "[s]he just told you he had gloves on, didn't she?" Later, during his own testimony during the guilt phase of the trial, Oats apologized to the judge for this earlier interruption.

[17] We note that after giving his confession to the police, Oats was able to direct the police to the overpass where he had thrown his gun during the high-speed car chase with the police.

surrounding Oats' two escapes from police custody.[18]  See Daugherty v. Dugger, 839

F.2d 1426, 1432 (11th Cir. 1988) (concluding that defendant failed prejudice prong of

Strickland because expert testimony regarding defendant's alleged domination by

another would have been subject to rebuttal by defendant's prior contradictory

statements).  In denying Oats' Rule 3.850 motion for post-conviction relief, the state

court found that "the ultimate conclusions of the [defense] experts are positively

refuted by the record, including the Defendant's conduct prior to, during, and

subsequent to the criminal episodes and throughout the judicial proceedings."  Order

Denying Rule 3.850 Relief, at 5 (November 21, 1990).  The state court's finding that

Oats was competent to stand trial is amply supported by the evidence.  Thus, we

conclude that Oats fails to satisfy the prejudice requirement of Strickland, and we

reject this aspect of his ineffective assistance of counsel claim.[19]

---

[18] Oats' first escape occurred on December 24, 1979, while he was in custody for police interrogation. After confessing to the ABC liquor store crime, Oats told police officers that because his mother was very ill, he wished to see her and tell her in person that he had been arrested.  The officers complied with Oats' request and let Oats visit his mother.  During this visit, Oats escaped out the back door of her house and remained free for three days.  Oats' second escape occurred on June 14, 1980, prior to his trial in the instant case.  While a guard was distracted, Oats and other inmates climbed over a wall at Marion County Jail.  Oats was recaptured approximately six months later after traveling to New York and Texas.

[19] Based on the foregoing, we also reject Oats' substantive claim that he was incompetent to stand trial in 1980.  We conclude that the state court's

## 2. Oats' Capacity to Validly Waive His *Miranda* Rights

Oats also contends that his trial counsel were ineffective in failing to argue that his confessions should be suppressed because he lacked the capacity to waive his Miranda rights. Oats' trial counsel filed a motion to suppress Oats' confessions to the ABC liquor store robbery-attempted murder and Jeanette Dyer robbery-murder based on the contention that his confessions were involuntary because of wrongful inducements made to him during his interrogation by the examining officers. Oats' trial counsel vigorously argued this wrongful inducement theory at the suppression hearing, but it was ultimately rejected by the state trial court. Oats contends that, rather than or in addition to arguing this "wrongful inducement" theory, his trial counsel should have found mental health experts to testify that he did not have the

---

finding, after the eleven day Rule 3.850 hearings, that Oats was competent at the time of his trial is fairly supported by the record, and thus is entitled to a presumption of correctness on federal habeas review. See Baal, 495 U.S. at 735, 110 S. Ct. at 2225 (1990); Maggio, 462 U.S. at 117, 103 S. Ct. at 2264 (1983); Hogan, 986 F.2d at 1372. Finally, to the extent that Oats argues that his procedural due process rights were violated under Pate v. Robinson, 383 U.S. 375, 86 S. Ct. 836 (1966), because the trial judge failed to hold a hearing regarding Oats' competency prior to trial, we reject the argument as without merit. The three court-appointed psychiatrists had found Oats competent to stand trial, there was little or no evidence before the trial court raising a bona fide doubt as to Oats' competency, and thus the trial court did not have a sua sponte duty to hold a pre-trial competency hearing under Pate.

mental capacity to understand and knowingly waive his <u>Miranda</u> rights.[20] We reject

this aspect of Oats' ineffective assistance of counsel argument because Oats is unable

to demonstrate that if expert testimony had been offered at the suppression hearing, the

trial judge probably would have found that Oats' <u>Miranda</u> waiver was ineffective. The

trial judge denied Oats' motion to suppress after (1) hearing the testimony of the

interrogating officers concerning their observations of Oats at the time of his

confessions,[21] (2) listening to a recording of Oats' statements during one of the police

interviews, and (3) personally observing Oats during his testimony at the suppression

hearing.[22] In light of this evidence actually introduced at the suppression hearing, and

in light of the evidence adduced in the 1990 Rule 3.850 hearing and the state court's

findings in that regard, we cannot conclude that the trial judge probably would have

ruled differently on Oats' motion to suppress if Oats' trial counsel had presented expert

---

[20] Oats bases this argument on the testimony of Drs. Phillips and Carbonell at the 3.850 hearing that Oats was incapable of knowingly waiving his <u>Miranda</u> rights at the time of his confession. State experts Drs. Mutter and Haber reached the opposite conclusion that Oats was capable of knowingly waiving his <u>Miranda</u> rights.

[21] The officers testified that at the time of his confessions, Oats was alert and did not appear to be under the influence of alcohol or drugs, accurately described the details of the ABC liquor store robbery and shooting, and filled out and signed a written waiver of <u>Miranda</u> rights form.

[22] During his suppression hearing testimony, Oats never claimed he did not understand his <u>Miranda</u> rights.

testimony concerning Oats' ability to knowingly waive his <u>Miranda</u> rights.[23]

Therefore, Oats fails the prejudice prong of <u>Strickland</u>.[24]

---

[23] For the foregoing reasons, we also reject Oats' substantive claim that the state trial court erred in denying his motion to suppress his confessions because he lacked the mental capacity to intelligently and voluntarily waive his <u>Miranda</u> rights.

Oats also argues that his confessions should have been suppressed because they were induced by promises of leniency and/or family visitation, and were therefore legally involuntary. This claim of improper inducement primarily is based on an investigating officer's statement to Oats that:

> We as police officers can't promise you anything other than we will . . . like I told you before, we'll talk to everybody in the system about getting help for you, and we'll talk to the State Attorney's Office about your bond; I'll promise you that.

The state trial court, after considering all of the evidence at the suppression hearing, including Oats' own testimony confirming that the interrogating officers stated that they could not promise him anything, found that Oats' confessions were voluntary and not the product of improper promises or inducements. The Florida Supreme Court also concluded that Oats' confessions were free and voluntary. <u>Oats v. State</u>, 446 So. 2d 90, 93 (Fla. 1984). After reviewing the record, we conclude that Oats' statements to the police were voluntary. The interrogating officers did not promise leniency and made no statements that would render Oats' confessions involuntary. <u>See</u> <u>Williams v. Johnson</u>, 845 F.2d 906, 909 (11th Cir. 1988). Therefore, we conclude that the state trial court properly denied Oats' motion to suppress.

[24] Oats also contends that his trial counsel were deficient in failing to pursue a defense of voluntary intoxication. We reject this argument. There were significant inconsistencies in Oats' statements about

17

3. The Penalty Phase of Trial

his consumption of alcohol and/or use of drugs on the
days of the crimes.  Oats reported to Dr. Carrera that
he had drunk one beer and used no drugs on December 19
and 20, 1979, yet also stated to Dr. Carrera and others
that he consumed a fifth of alcohol, two six packs of
beer, and other drugs each day in the days leading up
to the crimes.  Oats stated that drinking this amount
of alcohol "would get him high, but not drunk," yet he
also reported to Dr. Carrera that drinking half a pint
of liquor would cause him to become "dizzy, see stars
and almost faint."  In denying his motion for
collateral relief under Rule 3.850, the state court
found that Oats "presented no credible evidence of
intoxication at the time of his murder."  We agree.
Oats' self-serving and inconsistent statements are not
sufficient evidence warranting a jury instruction on
voluntary intoxication under Florida law, see
Bertolotti v. State, 534 So. 2d 386, 387 (Fla. 1988),
and thus Oats' trial counsel were not deficient in
failing to raise an affirmative defense that was
unreasonable under the circumstances or for failing to
request a jury instruction that was not warranted by
the evidence.

Oats also contends that his trial counsel rendered
ineffective assistance by not properly challenging the
prejudicial effect of his shackling during trial.  This
specific claim is procedurally barred because it was
raised for the first time in Oats' appeal from the
state trial court's denial of his request for Rule
3.850 relief.  Oats is unable to establish cause for
not raising the issue in a timely manner, and is unable
to establish actual prejudice from the alleged error.
See Wainwright v. Sykes, 433 U.S. 72, 90-91, 97 S. Ct.
2497, 2508-2509 (1977).  The record shows that Oats'
trial counsel did object to his appearing in court in a
shackled condition, and thus prior to trial a procedure
was arranged to prevent the jury from seeing Oats'
shackles.

18

Oats contends that his trial counsel were ineffective in failing to adequately prepare for the penalty phase of trial. Specifically, Oats argues that his trial counsel (1) failed to ask Dr. Carrera, the only mental expert who testified during the penalty phase, to address the existence of statutory and non-statutory mitigating circumstances, (2) failed to call any other mental experts to testify as to his alleged mental retardation and incompetence, or to testify as to the existence of mitigating circumstances, and (3) failed to call numerous relatives who could have testified regarding his abusive childhood and supported a finding of mitigating circumstances.[25] Oats contends that if his trial counsel had adequately prepared for the penalty phase, he would have been able to prove the statutory mitigating circumstances of extreme mental or emotional disturbance, lack of capacity to appreciate the criminality of his conduct and conform his conduct to the requirements of the law, and substantial domination by others.[26]

---

[25] Oats' trial counsel called four of Oats' relatives to testify during the penalty phase: Vernittia Mae Gant, his sister; Edith Marie Johnson, his aunt; Freddie Oats, his brother; and Willie Mae Oats, his mother. Oats alleges that his trial counsel were deficient in preparing these witnesses for the penalty phase.

[26] Oats relies on the testimony of Drs. Carbonell and Phillips at the Rule 3.850 proceeding that these mitigating circumstances were present at the time of the offense. He also emphasizes Drs. Carrera, Gonzalez, and Natal's *post hoc* suggestions that if Oats' trial counsel had asked them to consider mitigating circumstances, they probably would have found that Oats was suffering from an extreme mental disturbance, was unable to conform his conduct to the requirements of the law at the time of the offense, and was under the

19

We reject this aspect of Oats' ineffective assistance of counsel argument because he is unable to satisfy the prejudice prong of <u>Strickland</u>. First, a great deal of evidence regarding potential mitigating circumstances was introduced during the penalty phase, and apparently rejected by jury and the judge. The record reveals that Dr. Carrera testified at length about the mistreatment that Oats suffered at the hands of his aunt during his abusive childhood, the emotional and impulse disorders that Oats developed as a result of his upbringing, and Oats' history of alcohol and substance abuse. Dr. Carrera also testified regarding his conclusion that Oats was functioning at either the "very low average range or possibly the upper part of the borderline range of intelligence" and at a seventh-grade level in terms of classroom information. Furthermore, four relatives testified at the penalty phase regarding Oats' mistreatment as a child, the head injury he suffered during childhood as a result of his aunt's mistreatment, and his frequent headaches and strange behavior. Following this testimony, trial counsel argued in closing summation that Oats should not receive the death penalty because he functioned at a "borderline level," that the mitigating circumstance of age applied, that Oats was under an extreme mental or emotional

---

substantial domination of others. This testimony was contradicted by Drs. Mutter and Haber, who after interviewing and evaluating Oats, concluded that he was not under an extreme emotional or mental disturbance at the time of crime, and that he had the capacity to conform his conduct to the requirements of law and capacity to appreciate the criminality of his conduct.

disturbance at the time of offense, and that Oats was unable to appreciate the criminality of his conduct.

With regard to Oats' contention that his trial counsel should have called other experts, such as Drs. Phillips and Carbonell, to testify as to his mental retardation and brain damage and the existence of mitigating circumstances, we note that the state court, after the eleven day Rule 3.850 hearing, rejected this argument based on its finding that

> the factual bases upon which these experts posit their opinion are not believable and are not supported by such objective evidence as to suggest a reasonable possibility that the jury's recommendation and therefore the sentence would have been different. Moreover, the ultimate conclusions of the experts are positively refuted by the record, including the Defendant's conduct prior to, during, and subsequent to the criminal episodes and throughout the judicial proceedings.

Order Denying 3.850 Relief, at 5 (November 21, 1990). These state court findings of fact are entitled to deference, see Strickland, 466 U.S. at 698, 104 S. Ct. at 2070 (stating that state court findings of fact made in the course of deciding an ineffective assistance of counsel claim are subject to the deference requirement of § 2254(d)). Our review of the record of the Rule 3.850 proceeding persuades us that these factual findings are fairly supported by the record. The state court's finding of fact discrediting the factual bases of the defense mental health experts has support in the record and undermines the opinions of these experts. Moreover, if Oats had sought to call Drs. Carbonell and Phillips to testify regarding his mental functioning and brain damage, the State could have called Drs. Mutter and Haber to contradict these

21

conclusions.[27]   Also, the potential testimony of the defense mental health experts

regarding the existence of mitigating circumstances could have been rebutted by the

State.  Drs. Mutter and Haber concluded that Oats was not under the influence of an

extreme mental or emotional disturbance at the time of the offense, and had the

capacity to conform his conduct to the requirements of the law.  Drs. Mutter and Haber

also testified that Oats' conduct–during the offense and its aftermath, his detailed

confession, his conduct during his two escapes, and his conduct during the litigation

proceedings–was inconsistent with the picture of Oats painted by the defense experts.

In light of the foregoing, in light of the fact that the substance of Oats' mental

deficiencies and abusive childhood were presented to the jury, and in light of the four

strong aggravating circumstances found by the sentencing judge on remand,[28] we

conclude that there is no reasonable probability that the jury would have returned a life

sentence.  Thus, Oats has failed to satisfy the prejudice prong of Strickland.  See

Daugherty v. Dugger, 839 F.2d 1426, 1432 (11th Cir. 1988) (concluding that "given

the severity of the aggravating circumstances in this case, we cannot conclude that the

absence of psychiatric testimony in the sentencing phase creates a reasonable

probability that the jury would have recommended life").[29]

_____

[27] See supra note 13.

[28] See supra note 8.

[29] Oats' brief on appeal also includes a separate claim entitled "The Ake v. Oklahoma Claim."  See Ake v. Oklahoma, 470 U.S. 68, 105 S. Ct. 1087 (1985).

4. <u>Oats' Competency at Resentencing</u>

As previously noted, the Florida Supreme Court affirmed Oats' conviction but found error in the sentence and remanded to the state trial court for resentencing. <u>Oats v. State</u>, 446 So. 2d 90, 95-96 (Fla. 1984). When the case returned to the trial court in 1984, Oats' trial counsel filed a series of motions including a motion seeking the appointment of three mental health experts pursuant to Florida Rule of Criminal Procedure 3.740 (1984) entitled "Procedure When Insanity Is Alleged as Cause for Not Pronouncing Sentence." Rule 3.740 at that time[30] provided that "if the court has reasonable ground to believe that the defendant is insane, it shall . . . immediately fix a time for a hearing . . . [and] may appoint not exceeding three disinterested qualified experts to examine the defendant and testify at the hearing as to his mental condition." The trial court conducted a hearing on the motion for the purpose of determining

_____

However, the thrust of Oats' argument is merely a restatement of his claim that counsel was ineffective in failing to ensure that he received a comprehensive and competent mental health evaluation, a claim which we reject in the text. To the extent Oats has attempted to articulate a different, but related claim, his attempt is too vague and imprecise; we decline to address any such claim.

[30] The Florida Rules of Criminal Procedure have since been completely revised. Rule 3.740 was repealed in 1988 at the same time that Rule 3.210 et seq. (Competency to Stand Trial) was amended to apply to all stages of a criminal proceeding. <u>See</u> <u>In re Amendments to Florida Rules of Criminal Procedure</u>, 536 So. 2d 992, 994-996 (Fla. 1988).

whether experts should be appointed and whether a further hearing should be

scheduled in accordance with Rule 3.740.  During that hearing, Oats' counsel

recounted at length the history of the case and Oats' deprived background, represented

to the court his belief that Oats lacked the mental capacity to proceed with a sentencing

hearing, and invited the trial judge to personally question Oats concerning his

understanding of the resentencing proceedings.  Oats then testified and was examined

by his counsel and cross-examined by the prosecution about his understanding of the

impending resentencing hearing.  At the conclusion of Oats' testimony, the trial judge

denied the motion and proceeded with the resentencing hearing based on the judge's

finding that there were no reasonable grounds to believe that Oats was insane and

unable to proceed in the resentencing.

Oats appealed the trial court's refusal to appoint a panel of experts to determine

his sanity at resentencing and the Florida Supreme Court affirmed.  Oats v. State, 472

So. 2d 1143, 1144 (Fla. 1985).  The court concluded that the trial judge did not abuse

his discretion in denying Oats' Rule 3.740 motion and concluded that the clear

language of Rule 3.740 required the sentencing court to find reasonable grounds for

believing that a defendant is insane as a precondition to the appointment of experts and

the scheduling of a further hearing.  Id.  In discussing Rule 3.740, the court contrasted

the language of Rule 3.740 with the language of Rule 3.210 (Competency to Stand

24

Trial) and Rule 3.216 (Insanity at the Time of the Offense) as they then existed,[31] and emphasized that the appointment of experts under those rules, which applied to earlier stages of criminal proceedings, was automatically triggered by the mere filing of a motion by defense counsel, whereas Rule 3.740, specifically applicable to sentencing, required a prior judicial determination of reasonable grounds. The court concluded, therefore, that under Rule 3.740, unlike the other rules, an assertion of incompetency by defense counsel was not sufficient, standing alone, to mandate appointment of mental health experts and a hearing on competency. Id.

In this appeal, Oats contends that he received ineffective assistance of trial counsel because his trial counsel filed the resentencing motion under the "wrong rule." Oats argues that if his trial counsel had sought a competency evaluation under Florida Rules 3.210 or 3.216, the appointment of experts at resentencing would have been mandatory. We reject this argument as without merit because Oats' trial counsel filed the motion under the right rule as the rules existed at that time.[32] Under the clear language of the rules, Rule 3.740 applied to claims of insanity and/or incompetence at

---

[31] See supra note 30.

[32] Oats contends that the Florida Supreme Court "clearly noted" trial counsel's error in filing the motion under Rule 3.740. Oats is mistaken. The Court's reference to Rules 3.210 and 3.216 was not made to suggest that Oats' trial counsel should have invoked them instead of Rule 3.740; rather, the reference to those rules was made as part of the Court's explanation of its interpretation of Rule 3.740. Oats v. State, 472 So. 2d at 1144.

sentencing, while Rules 3.210 and 3.216 applied to earlier stages of criminal proceedings.[33]

Oats also claims that his procedural due process rights were violated under Pate v. Robinson, 383 U.S. 375, 86 S. Ct. 836 (1966), because the judge at his resentencing failed to conduct a sua sponte competency hearing despite information raising a bona fide doubt as to his competency.[34] We reject this argument as without merit. As noted above, Oats' counsel made a motion objecting to resentencing on the grounds that Oats was insane and asked the judge to inquire of Oats whether he understood the nature of the resentencing proceedings, and as a result, Oats testified at the hearing. Having

---

[33] Oats also contends that his trial counsel rendered ineffective assistance of counsel at resentencing by failing to present "available and compelling" evidence of mitigating circumstances. We conclude that Oats is unable to satisfy the prejudice prong of Strickland for the same reasons that we rejected Oats' claim relating to his original sentencing. See supra Section II.A.3.

[34] Oats contends that his mental state deteriorated between the 1981 sentencing and the resentencing in 1984. In rejecting Oats' Rule 3.850 claim for post-conviction relief, the state trial court found that "no new evidence was presented in the 3.850 hearing to cast any doubt on the Defendant's competency [in April 1984]." Order Denying Rule 3.850 Relief, at 4 (November 21, 1990). This factual finding is entitled to a presumption of correctness, see Baal, 495 U.S. at 735, 110 S. Ct. at 2225 (1990); Maggio, 462 U.S. at 117, 103 S. Ct. at 2264 (1983); Hogan, 986 F.2d at 1372, and we conclude that the finding is fairly supported by the record. Based on this reasoning, we also reject Oats' substantive claim that he was incompetent at the resentencing in 1984.

observed Oats' demeanor at both the resentencing hearing and during the prior litigation of the case, and having reviewed the prior reports of court-appointed mental health experts, the judge found that there was no reasonable basis to believe that Oats was insane and unable to proceed in the resentencing. After reviewing the record, we conclude that there was no evidence before the trial judge at resentencing that would raise a bona fide doubt as to Oats' competency, and thus the court did not have a sua sponte duty to hold a competency hearing under Pate.

B. Whether Oats Was Entitled to a New Advisory Jury at Resentencing

In Oats v. State, 446 So. 2d 90, 95-96 (Fla. 1984), the Florida Supreme Court affirmed Oats' conviction, but set aside his death sentence and remanded for "entry of a new sentencing order" because the trial court erred in its determination of three of the aggravating circumstances.[35] Following remand, Oats' counsel moved for the court to

---

[35] In sentencing Oats to death, the trial judge found that the State had proven beyond a reasonable doubt six statutorily enumerated aggravating circumstances and only one mitigating circumstance. Oats, 446 So. 2d at 95. The Florida Supreme Court concluded that the trial judge erred by (1) finding that the "heinous, atrocious, or cruel" aggravating circumstance was applicable, (2) "doubling up" on the aggravating circumstances of "commission of a crime during a robbery" and murder "for pecuniary gain," and (3) considering Oats' prior conviction in the ABC liquor store case as an aggravating factor because that conviction was later reversed. Id. However, in regard to the ABC liquor store conviction, the Florida Supreme Court noted that Oats had subsequently been convicted on retrial in that case, and thus on remand for resentencing, there would be no need to resubmit the evidence to a jury for resentencing. Id.

impanel a new jury for resentencing. The court denied the motion, and the Florida

Supreme Court affirmed this denial based on its conclusion in the original appeal that

"'[b]ecause a new jury would be considering essentially the same evidence as was

presented to the original jury, we find no reason to resubmit the evidence to a jury.'"

Oats v. State, 472 So. 2d 1143, 1145 (Fla. 1985) (quoting Oats v. State, 446 So. 2d 90,

95 (Fla. 1984)).

Oats claims that he was entitled to have a new penalty phase jury impaneled

upon remand for reweighing of the aggravating and mitigating circumstances. We

reject this argument because the errors that occurred at the original sentencing

proceeding did not affect the jury's recommendation. See Funchess v. Wainwright,

772 F.2d 683, 692-93 (11th Cir. 1985) (concluding a new advisory jury was not

required on remand because the initial proceeding was free from serious error); Proffitt

v. Wainwright, 756 F.2d 1500, 1503 (11th Cir. 1985) (same). First, we emphasize that

there was no error found in either the trial court's evidentiary rulings or in its

definitional instructions to the jury regarding aggravating and mitigating

circumstances. See Menendez v. State, 368 So. 2d 1278, 1282 (Fla. 1979) (concluding

that it was not essential for a new jury to be convened on remand for resentencing

because the defendant had not demonstrated any error in the instructions given to the

jury or the evidence it considered in making its recommendation).[36] Oats contends that

_____

[36] In Menendez v. State, 368 So. 2d at 1282, the
Florida Supreme Court vacated the defendant's death

"erroneous information" about the ABC liquor store crimes was presented to the original jury because the jury heard evidence that Oats was convicted of attempted first degree murder and robbery in the ABC liquor store case, but the convictions were subsequently reversed and Oats was convicted of attempted second degree murder and robbery after a retrial.[37] We disagree. Second degree attempted murder and robbery are prior violent felony convictions and thus supported the aggravating circumstance that Oats was previously convicted of a "felony involving the use or threat of violence to the person." See Fla. Stat. § 921.141(5)(b). Furthermore, the same underlying facts presented to the jury regarding the ABC liquor store case supported both Oats' original conviction and his conviction after retrial in that case.[38] Therefore, we agree with the

---

sentence because the trial judge improperly considered six aggravating circumstances, and remanded to the trial judge for consideration of the one properly found aggravating circumstance and one mitigating circumstance.

[37] See supra note 7.

[38] To the extent that Oats argues that a new jury should have been impaneled because the Florida Supreme Court held that the evidence did not support the trial judge's finding of a heinous aggravator and did not support the finding of both a robbery and pecuniary gain aggravator, Oats v. State, 446 So. 2d at 95, we conclude that this argument is without merit. The jury of course did not know that the trial judge would later find the heinous factor or make the doubling-up error. Rather, Oats' argument would be that the jury should never have been given an instruction that included the heinous factor or both the robbery and pecuniary gain factors. Oats' trial counsel argued both of these precise points to the jury during the penalty phase of

Florida Supreme Court that a new jury would be considering essentially the same evidence as was presented to the original jury. We reject Oats' argument that a new advisory jury should have been impaneled for resentencing.

## III. CONCLUSION

For the foregoing reasons, we affirm the district court's order denying Oats' petition for a writ of habeas corpus.

AFFIRMED.[39]

---

trial, and we decline to presume that the jury based its death sentence recommendation on those aggravating circumstances that were not supported by the evidence. See Sochor v. Florida, 504 U.S. 527, 538, 112 S. Ct. 2114, 2122 (1992) (concluding that a jury is "likely to disregard an option unsupported by evidence," and thus Court would not presume that jury's sentence recommendation rested on an aggravating circumstance that was not supported in the evidence).

[39] Oats' other claims on appeal are either procedurally barred or are without merit and warrant no discussion. Oats contends that: (1) the jury instructions on the "heinous, atrocious, and cruel" and "cold, calculated, and premeditated" aggravating circumstances were constitutionally inadequate and a narrowing construction of these aggravators should have been applied during the "sentencing calculus;" (2) certain instructions and prosecutorial arguments diluted the jury's sense of responsibility for sentencing in violation of Caldwell v. Mississippi, 472 U.S. 320, 105 S. Ct. 2633 (1985); (3) the jury was erroneously instructed that a majority vote was required to recommend life imprisonment; (4) the trial court's sentencing and resentencing orders failed to detail specific factual findings in support of each aggravating and mitigating factor related to imposition of the death penalty; (5) the execution of a person

30

with Oats' mental deficiencies violates the Eighth and Fourteenth Amendments; (6) Florida's capital sentencing scheme violates the Eighth and Fourteenth Amendments; and (7) the state trial judge was biased. These claims are procedurally barred. Any allegations of ineffective assistance of counsel (trial or appellate) in failing to raise these claims are without merit. In addition, the contention numbered (1) above is also <u>Teague</u>-barred. <u>Teague v. Lane</u>, 489 U.S. 288, 109 S. Ct. 1060 (1989); <u>see</u> <u>Glock v. Singletary</u>, 65 F.3d 878, 890 (11th Cir. 1995) (en banc).

In addition, the following claims are without merit and warrant no discussion: (1) the argument that Oats was denied his right to a fair and impartial jury in violation of <u>Irvin v. Dowd</u>, 366 U.S. 717, 81 S. Ct. 1639 (1961), because of the trial court's failure to change venue and/or sequester the jury; (2) the argument that the introduction of evidence relating to the ABC store robbery/shooting rendered Oats' trial fundamentally unfair; and (3) the allegation of prosecutorial misconduct. To the extent that Oats has made other arguments not mentioned specifically in this opinion, these claims are also rejected without need for discussion.

Finally, we need not decide whether the Florida Board of Executive Clemency is required, under <u>Brady v. Maryland</u>, 373 U.S. 83, 83 S. Ct. 1194 (1963), to reveal the information in Oats' "clemency investigation file" because Oats has not made a showing that any information in this file is either exculpatory or was unavailable to him.