[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 16-15460
_____

D.C. Docket Nos. 8:15-cv-02325-SCB-TBM,
8:09-cr-00585-SCB-TBM-2

MARIAN I. MORGAN,

Petitioner-Appellant,

versus

UNITED STATES OF AMERICA,

Respondent-Appellee.

_____

Appeal from the United States District Court
for the Middle District of Florida
_____

(August 21, 2019)

Before JORDAN, GRANT, and DUBINA, Circuit Judges.

PER CURIAM:

Marian Morgan is a federal prisoner serving a 405-month sentence for her involvement in an illegal investment scheme.  After twice appealing the length of her sentence, Ms. Morgan filed a motion to vacate, set aside, or correct her sentence under 28 U.S.C. § 2255, arguing that her trial counsel's failure to object to certain hearsay statements amounted to ineffective assistance of counsel.  The facts surrounding Ms. Morgan's conviction are well known to the parties and were fully developed in Ms. Morgan's previous appeals.  *See United States v. Morgan*, 586 F. App'x 547, 548–49 (2014); *United States v. Morgan*, 530 F. App'x 908, 909–10 (11th Cir. 2013).  We recount the facts relevant to her ineffective assistance of counsel claims below.

## I

A grand jury charged Ms. Morgan with 22 counts, including conspiracy to defraud the United States, wire fraud, transferring funds taken by fraud, money laundering, and making false statements on income tax returns.  Ms. Morgan's husband, John Morgan, and two other co-conspirators were charged in the same indictment but agreed to plead guilty to particular charges.  Ms. Morgan was the only defendant who elected to go to trial.

## A

Over the course of her 17-day trial, the government presented volumes of evidence to show that Ms. Morgan, her husband, and two co-conspirators defrauded

approximately 143 investors of almost $14 million.  The jury heard testimony from 13 victims, multiple law enforcement officers, and an expert in the alleged investment scheme.  One of the government's principal witnesses was IRS Special Agent Diane Knott, who investigated the fraud and forensically examined the accounts used to facilitate the scheme.

On the fifth day of Ms. Morgan's trial, the government informed the court and the defense that, over the previous weekend, Agent Knott had obtained a signed statement from Mr. Morgan admitting to the scheme and incriminating Ms. Morgan. The government furnished the defense with a copy of the statement.  The following day, the government called Agent Knott as a witness to testify about her investigation and introduce evidence that the Morgans ran a fraudulent investment scheme.   The defense then cross-examined Agent Knott by attacking the thoroughness of her investigation and suggesting that the government rushed to judgment in accusing Ms. Morgan.  Before redirect examination, the prosecutor requested a side bar with the court and argued that by questioning the thoroughness of the government's investigation the defense had opened the door for Agent Knott to testify about Mr. Morgan's recent statement incriminating Ms. Morgan.  Defense counsel did not object to the government eliciting Mr. Morgan's statement but requested that he be permitted to question Agent Knott about Mr. Morgan's plea agreement and attack his credibility.

On redirect, the prosecutor asked Agent Knott whether the investigation was ongoing. Agent Knott explained that that the government was still investigating and that Mr. Morgan was cooperating. The prosecutor then asked whether Mr. Morgan had told Agent Knott anything about the fraudulent documents. Agent Knott responded that Mr. Morgan had admitted that the financial documents were "all fraudulent documents and that he and Marian [Morgan] knew that those documents were fraudulent documents." D.E. 9 at 6 (quoting Crim. D.E. 355 at 72:14–19). Defense counsel did not object to Agent Knott reciting Mr. Morgan's statement, but he questioned Agent Knott on recross about Mr. Morgan's plea agreement and suggested that Mr. Morgan only implicated his wife to reduce his own sentence.

Mr. Morgan's statement was mentioned at least three more times during Ms. Morgan's trial. During the defense's case in chief, Ms. Morgan elected to testify, and the prosecutor cross-examined her about her husband's statement. Ms. Morgan stated that she and her husband never defrauded their investors and that the government had forced Mr. Morgan to say the financial documents were fake. In response to Ms. Morgan claiming that her husband's statement was coerced, the government called Mr. Morgan's attorney to testify to Mr. Morgan's cooperation with the government. On direct and cross examination, the attorney confirmed that Mr. Morgan's cooperation with the government and statement incriminating Ms.

4

Morgan were voluntary.    Finally, the government referenced Mr. Morgan's statement in closing arguments.

## B

Based on the evidence presented, the jury convicted Ms. Morgan on all 22 counts charged in the indictment.  The district court sentenced Ms. Morgan to 420 months' imprisonment, which was reduced to 405 months as a result of her first appeal.  *See Morgan*, 530 F. App'x at 909–10.  After unsuccessfully appealing her reduced sentence, Ms. Morgan moved to vacate, set aside, or correct her sentence under 18 U.S.C. § 2255, arguing that her trial counsel provided ineffective assistance of counsel.  As summarized by the district court, Ms. Morgan alleged that her trial counsel erred in the following ways:

> (1) by failing to make a motion in limine to exclude all testimony about co-defendant, alleged co-conspirator, and husband John Morgan's hearsay statement to [Agent] Knott, which, if believed, proved [Ms. Morgan]'s criminal intent; (2) by failing to object to the Government's question to [Agent] Knott that asked her to provide clearly hearsay testimony about an out-of-court statement made by [Ms. Morgan]'s husband John Morgan that directly established [Ms. Morgan]'s criminal intent; (3) by failing to move in limine to preclude, and by repeatedly failing to object to, questions from the Government to [Ms. Morgan] during cross-examination that again emphasized the John Morgan hearsay statement made by [Agent] Knott; (4) by failing to impeach John Morgan's hearsay statement, which directly established [Ms. Morgan]'s criminal intent, with prior inconsistent statements that were made by the hearsay declarant; (5) by failing to preclude introduction

5

of evidence regarding John Morgan's guilty plea; and (6)
through [t]rial [c]ounsel's cumulative errors.

D.E. 9 at 8.

To establish ineffective assistance of counsel, Ms. Morgan had to show that (1) her counsel's performance was deficient and (2) the deficient performance prejudiced her defense. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984). The district court rejected Ms. Morgan's ineffective assistance of counsel claim under both prongs of *Strickland*—concluding that the alleged errors amounted to "trial strategy" and that Ms. Morgan could not show a reasonable probability that, absent the alleged errors, her trial would have had a different result. *See* D.E. 9 at 11, 13. According to the district court, "[e]ven excluding the statement of John Morgan as testified to by [Agent] Knott, the evidence of [Ms. Morgan]'s guilt was *overwhelming*." D.E. 9 at 14 (emphasis added).

Following our review of the record, and with the benefit of oral argument, we affirm the district court's conclusion that Ms. Morgan was not prejudiced by her trial counsel's alleged errors.

## II

On appeal from the denial of a § 2255 motion, we review the district court's legal conclusions de novo and its factual findings for clear error. *See Denson v. United States*, 804 F.3d 1339, 1341 (11th Cir. 2015). Whether Ms. Morgan's trial

counsel provided ineffective assistance of counsel is a mixed question of law and fact that we review de novo. *See id*.

## A

To establish an ineffective assistance of counsel claim, a petitioner must satisfy both prongs of *Strickland*—deficient performance and prejudice. *See Strickland*, 466 U.S. at 687. In reviewing performance, "counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.* at 690. Trial counsel's performance is deficient only if it falls below the wide range of competence demanded of attorneys in criminal cases. *See id*. at 689. To establish prejudice, the petitioner must establish a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694.

Because a petitioner must show both deficient performance and prejudice, we "need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies." *Id.* at 697. If the petitioner "makes an insufficient showing on one [prong]," the ineffective assistance claim fails. *Id*. *See also Oats v. Singletary*, 141 F.3d 1018, 1023 (11th Cir. 1998) (recognizing that under *Strickland*, "we are free to dispose of ineffectiveness claims on either [performance or prejudice] grounds").

Here, we start with the prejudice prong. In this context, *Strickland* requires Ms. Morgan to show that it is reasonably probable that the jury would not have convicted her but for her trial counsel's errors. *See Strickland*, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* "It is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding, . . . and not every error that conceivably could have influenced the outcome undermines the reliability of the result of the proceeding." *Id.* at 693. Stated differently, "[t]he likelihood of a different result must be substantial, not just conceivable." *Harrington v. Richter*, 562 U.S. 86, 112 (2011). "On the other hand, . . . a defendant need not show that counsel's deficient conduct more likely than not altered the outcome in the case." *Strickland*, 466 U.S. at 693.

To determine whether Ms. Morgan has shown prejudice, we remove any evidence from the record that was admitted due to her trial counsel's alleged errors and ask, based on the remaining evidence, whether there is a reasonable probability that the jury would not have convicted her. *See id.* at 695–96. "In making this determination, we consider the totality of the evidence before the judge or jury." *Id.* at 695. *See also Wong v. Belmontes*, 558 U.S. 15, 26 (2009) (per curiam) ("[T]he reviewing court must consider all the evidence—the good and the bad—when evaluating prejudice."). Therefore, "a verdict or conclusion only weakly supported

by the record is more likely to have been affected by errors than one with overwhelming record support." *Strickland*, 466 U.S. at 696.

## B

The errors alleged by Ms. Morgan all trace back to her trial counsel allowing the government to introduce Mr. Morgan's hearsay statement through Agent Knott. If defense counsel had successfully moved to exclude Mr. Morgan's statement when the government requested a side bar and argued that the defense had opened the door to introduce Mr. Morgan's statement—as Ms. Morgan alleges he should have—the subsequent alleged errors related to Mr. Morgan's statement would have been avoided. *See Evans v. Sec'y, Fla. Dep't of Corr.*, 699 F.3d 1249, 1269 (11th Cir. 2012) ("[T]he prejudice inquiry should be a cumulative one as to the effect of all of the failures of counsel that meet the performance deficiency requirement . . . ."). We therefore measure prejudice by correcting that alleged error and asking whether it is reasonably probable that the jury would not have convicted Ms. Morgan based on other evidence in the record. *See Strickland*, 466 U.S. at 696. For several reasons, we conclude that Ms. Morgan was not prejudiced.

First, "a petitioner cannot satisfy the prejudice prong of the *Strickland* test with evidence that is merely cumulative of evidence already presented at trial." *Rose v. McNeil*, 634 F.3d 1224, 1243 (11th Cir. 2011). *See also Belmontes*, 558 U.S. at 22 (finding no prejudice where "adding [certain evidence] to what was already there

would have made little difference"). In this case, Mr. Morgan's statement—admitting that certain financial documents were fraudulent and that Ms. Morgan knew that the documents were fraudulent—was mostly cumulative of evidence already in the record. During the defense's cross examination of Agent Knott, and before the government ever sought to introduce Mr. Morgan's statement, defense counsel suggested that Agent Knott had assumed that the Morgans were defrauding investors before investigating. Agent Knott responded with the following answer:

> Well, we investigated enough to know that the documents—we do have witness testimony and evidence to show that these were . . . actually fraudulent documents. We do have witness testimony to tell us[,]that were actually involved in this fraud with Miss Morgan[,] . . . that was a fraud and that all these documents were obtained fraudulently and that the documents were fraudulent.

Crim D.E. 355 at 25. Defense counsel then asked Agent Knott, "So someone told you and you believed them?" Agent Knott responded, "Yes." *Id.* Defense counsel did not object to this elicited testimony by Agent Knott, and Ms. Morgan does not argue in her § 2255 motion that this amounted to ineffective assistance of counsel. Allowing the government to subsequently admit Mr. Morgan's statement on Agent Knotts redirect, therefore, clarified that Mr. Morgan was the witness Agent Knott

10

previously referred to and that, by being involved in the fraud, Ms. Morgan was aware that the financial documents were fraudulent.[1]

Second, the record contains overwhelming evidence, apart from Mr. Morgan's hearsay statement, that the financial documents were fraudulent and that Ms. Morgan knew of the fraud. *See Hays v. Alabama*, 85 F.3d 1492, 1496 (11th Cir. 1996) (concluding that the petitioner failed to establish that he was prejudiced by his trial counsel's failure to make certain objections "[i]n view of the overwhelming evidence supporting the verdict"). Over Ms. Morgan's 17-day trial, the government called almost 20 witnesses to establish that the Morgans and their co-conspirators operated a scheme that defrauded their investors of almost $14 million.

Although no witness directly testified that Ms. Morgan knew that the scheme used fraudulent financial documents, other evidence in the record strongly supported that conclusion. Law enforcement officers and an investment-scheme expert testified that the Morgans' investment scheme performed no lawful function or legitimate investments. The government also introduced evidence that Ms. Morgan consistently communicated with investors and co-conspirators to facilitate the scheme, that investment funds were transferred into the Morgans' personal accounts, and that Ms. Morgan used those funds to support an extravagant lifestyle. Given

---

[1] We acknowledge, of course, that identifying Mr. Morgan as the witness gave the testimony added bite. Our point is that the substance of Mr. Morgan's statement was already in the record without objection before the alleged error by defense counsel.

11

this evidence, it is not reasonably probable that Mr. Morgan's statement affected the outcome of Ms. Morgan's trial. *Cf. Strickland*, 466 U.S. at 696 ("[A] verdict or conclusion only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support.").

Third, "a defendant who chooses to present a defense runs a substantial risk of bolstering the Government's case." *United States v. Brown*, 53 F.3d 312, 314 (11th Cir. 1995). That is, in part, because we have held that "a statement by a defendant, if disbelieved by the jury, may be considered as *substantive evidence* of the defendant's guilt." *Id.* (emphasis in original). *See also United States v. Bennett*, 848 F.2d 1134, 1139 (11th Cir. 1988) (noting that the jury might have concluded that the defendants were "lying in an attempt to cover up illegal activities" based on their "dubious, if not wholly incredible" testimony). Here, Ms. Morgan testified for almost four days, and she repeatedly claimed that she was not aware of the fraud. The government attacked Ms. Morgan's credibility by introducing communications sent by Ms. Morgan to victims and co-conspirators, evidence that the Morgans fled the country to avoid prosecution, and a recording of a jailhouse phone call where Ms. Morgan contradicted her testimony. *See United States v. Blakey*, 960 F.2d 996, 1000 (11th Cir. 1992) ("Evidence of flight is admissible to demonstrate consciousness of guilt and thereby guilt."). Based on her conviction on all 22 counts, the jury obviously disbelieved Ms. Morgan's testimony.

12

At sentencing, the district court applied a two-level sentencing enhancement for obstruction of justice under U.S.S.G. § 3C1.1, citing "numerous instances where [Ms.] Morgan gave false testimony." Crim. D.E. 443 at 78. The court—which presided over Ms. Morgan's trial—noted that she could fill "a whole legal pad" with false statements made by Ms. Morgan. *Id.* at 44–45. Similarly, in denying Ms. Morgan's § 2255 motion, the court concluded that, when she testified, Ms. Morgan "lied repeatedly, showed little remorse, and provided unbelievable explanations for her conduct." D.E. 9 at 13.

The government's evidence establishing the fraud scheme, Ms. Morgan's testimony, and the evidence undermining Ms. Morgan's credibility is substantial evidence of Ms. Morgan's guilt. Therefore, it is not reasonably probable that the introduction of Mr. Morgan's statement affected the outcome of Ms. Morgan's trial.[2]

Because Ms. Morgan has not shown prejudice, we do not consider whether her trial counsel's performance was deficient. *See Strickland*, 466 U.S. at 697.

### III

For the foregoing reasons, we affirm the district court's denial of Ms. Morgan's § 2255 motion.

---

[2] Given our conclusion that Ms. Morgan failed to show prejudice from her counsel's failure exclude Mr. Morgan's hearsay statement—which would have avoided the subsequent alleged errors related to his statement—Ms. Morgan's other ineffective assistance of counsel claims fail. Even if all the errors related to Mr. Morgan's statement were corrected, Ms. Morgan has not shown a reasonable probability that the result of her trial would have been different.

13

**AFFIRMED.**